Stephen L. KINSEY and Dawn G. Kinsey, husband and wife, Plaintiffs,

v.

NESTOR EXPLORATION LTD.—1981A, a Texas limited partnership; Nestor Petroleum Company, a Texas corporation; Nestor D. Phillips and Geraldine A. Phillips, husband and wife; Al E. McClellan and Betty McClellan, husband and wife; Reid E. Renken and Cleo Renken, husband and wife; Tommy E. Morris and Jimmie Claudine Morris, husband and wife; Darrell D. Patrick and Alpha J. Patrick, husband and wife; Frank V. Bradley and Mary Beth Bradley, husband and wife; and Shearson American Express, formerly Shearson Loeb Rhoades, Inc., a foreign corporation; Warren Styner and Norma A. Styner, husband and wife, Defendants.

Nos. C–84–308, C–84–382.

United States District Court, E.D. Washington.

Feb. 14, 1985.

---

Robert J. Reynolds, Powers & Therrien, P.S., Yakima, Wash., for plaintiffs.

David A. Thompson, Halvorson, Appelgate & McDonald, Yakima, Wash., for defendants.

## ORDER

ROBERT J. McNICHOLS, Chief Judge.

On April 30, 1984, C–84–308 was commenced in this Court. On May 3, 1984, presumably in an attempt to cover all the bases in recognition of the jurisdictional quagmire which tends to ensnare litigants in the federal system, a virtually identical suit was brought in Yakima County Superior Court. That action was thereafter removed and assigned cause number C–84–382. For present purposes, these suits need not be described in any great detail. Suffice it to say that these actions each allege securities fraud involving two distinct sets of defendants who will be characterized here as "the Washington defendants," and "the Texas defendants." All defendants have moved for consolidation and for dismissal of various claims and parties.

 It should be noted at the outset that none of the jurisdictional issues addressed below have been raised by the parties. It is well-settled, however, that "a federal court is duty-bound to determine its proper jurisdiction on its own motion." *In re Martinez,* 721 F.2d 262, 264 (9th Cir.1983).

### I. C–84–382

 Notwithstanding the virtually complete identity of these two suits in terms of factual allegations and complement of parties, this removed action presents its own unique problems and will be dealt with first. In characterizing a cause of action for jurisdictional purposes, it is the gravamen of the underlying transaction which must be considered, and not the remedy asserted. As noted in *Guinasso v. Pacific First Fed. Sav. & Loan Ass'n,* 656 F.2d 1364 (9th Cir.1981), *cert. denied,* 455 U.S. 1020, 102 S.Ct. 1716, 72 L.Ed.2d 138 (1982):

> A suit may arise under federal law, even though a federal remedy is not sought, if the plaintiff's claim relies substantially on propositions that define federal rights, duties, or relationships.

Thus, even though plaintiff in the instant case seeks remedies provided under state law, the Court is required to go further, and to ask what the alleged wrong is, what duty was breached, and from what source that duty arose. Fortunately, this is not a difficult task, given the fact that plaintiff relies expressly and explicitly upon predicate violations of federal securities law in framing a number of the asserted causes of actions.[1]

Counts I, II and VIII allege violations of various statutes, and regulations promulgated thereunder, found in the Securities Exchange Act of 1934 [hereinafter the "1934 Act"]. So viewed, any issue over subject-matter jurisdiction must be resolved with reference to 15 U.S.C. § 78aa which provides:

> The district courts of the United States ... shall have *exclusive* jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity or actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder. [Emphasis added].

---

**1.** All references to the complaint are to the First Amended Complaint filed in each of these actions on June 22, 1984.

■ It is well-settled in the Ninth Circuit that the language quoted above means just what it purports to. Federal jurisdiction is exclusive. *See, e.g., Clark v. Watchie*, 513 F.2d 994, 997 (9th Cir.), *cert. denied*, 423 U.S. 841, 96 S.Ct. 72, 46 L.Ed.2d 60 (1975). Since removal jurisdiction is derivative in nature; *i.e.*, a federal court to which an action is removed acquires no greater jurisdiction than was initially vested in the state court, then it necessarily follows that those counts of the complaint falling within this category must be dismissed for lack of subject-matter jurisdiction. *Salveson v. Western States Bankcard Ass'n*, 731 F.2d 1423, 1431 (9th Cir.1984).

Counts III, IV, V and VI allege violations of the Securities Exchange Act of 1933 [hereinafter the "1933 Act"]. The jurisdictional statute governing these claims is 15 U.S.C. § 77v, which provides:

> The district courts of the United States ... shall have jurisdiction of offenses and violations under this subchapter and under the rules and regulations promulgated by the Commission in respect thereto, and, concurrent with State and Territorial courts, of all suits in equity and actions at law brought to enforce any liability or duty created under this subchapter.... *No case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States.* [Emphasis added].

■ The Court is aware of no published decision which has deviated from the plain, literal meaning of the non-removability clause. Clearly, the above-referenced counts are not subject to removal under 28 U.S.C. § 1441(a). That observation, however, does not answer the question of whether an alternative basis for removal exists under 28 U.S.C. § 1441(c):

> Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its jurisdiction.

The Ninth Circuit does not appear to have spoken to the precise question raised. The Court finds persuasive, however, the analysis employed in *Abing v. Paine, Webber, Jackson & Curtis*, 538 F.Supp. 1193 (D.Minn.1982). In *Abing*, the plaintiff had filed the type of shotgun complaint which seems endemic to securities litigation, stating seven causes of action, one of which was based on an alleged violation of the 1933 Act. Defendant removed, and plaintiff thereafter brought a motion to remand. In a brief but thoughtful analysis, the Court concluded that "there must be more than separable controversies to permit removal under section 1441(c)." *Id.* at 1196. Relying on *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951), the *Abing* court held that:

> Like Finn, the plaintiffs here have suffered but one loss. Despite the presence of at least six theories upon which the plaintiffs may have a right to recover, they may recover their loss only once. The single primary right the plaintiffs assert is the right to be dealt with in an open, fair, and professional manner in their business transactions. The claims predicated on the Investment Advisors Act of 1940 and the Investment Company Act of 1940 are not separate and independent from the remainder of the claims. Therefore, removal under 28 U.S.C. § 1441(c) is improper.

*Id.* at 1197.

So finding, the Court remanded the entire action, including those claims predicated on the 1940 Acts referenced above. For a parallel decision in a non-securities context, which exhaustively analyzes identical issues and comes to a similar conclusion, see *Gonsalves v. Amoco Shipping Co.*, 733 F.2d 1020 (2nd Cir.1984).

■ Having accepted the analysis and conclusions of *Abing* and *Gonsalves, supra*, as persuasive, the next task is to determine whether the instant complaint contains a "separate and independent claim." Clearly, Counts I, II and VIII can-

not be considered, for these have been dismissed. Nor can Counts IX, X, XI, XIII or XIV meet the requisites of § 1441(c), for these are all based solely upon state law, and thus "would [not] be removable if sued upon alone." Nor can Count VII be viewed as a viable basis, consisting as it does of a mixed bag of 1933 and 1934 claims. That leaves only Count XII, the RICO claim, which alleges violations under 18 U.S.C. § 1961 *et seq.*

One might validly raise a threshold contention as to whether the states have concurrent jurisdiction over federal RICO claims. If jurisdiction is exclusively federal, then Count XII must suffer the same fate of dismissal as did those counts predicated upon the 1934 Act. If concurrent, and the claim would therefore be amenable to removal, then it would at that point be necessary to proceed to an inquiry of whether the RICO count is a "separate and independent" claim within the meaning of § 1441(c).

Such limited authority as exists is badly split on the question of concurrent versus exclusive jurisdiction. Thus far, it would appear that only one state has asserted such authority, at least in a published opinion. *Greenview Trading Co. v. Hershman & Leicher P.C.*, 123 Misc.2d 152, 473 N.Y. S.2d 722 (N.Y.Sup.Ct.1984). Federal decisions are equally sparse, and the two which have been reported have come to diametrically opposed conclusions. *Compare, County of Cook v. Midcon Corp.*, 574 F.Supp. 902, 911–12 (N.D.Ill.1983) (exclusive), *with, Luebke v. Marine Nat'l Bank of Neenah*, 567 F.Supp. 1460, 1462 (E.D. Wisc.1983) (concurrent). Research does not disclose any appellate precedent on point.

■ It is a fairly safe wager that Washington does not believe its courts have concurrent jurisdiction. Otherwise, the legislature would not have deemed it necessary to enact the State's own "Little RICO," codified at R.C.W. ch. 9A.82 (eff. July 1, 1985). Be that as it may, the test for ascertaining whether concurrent or exclusive jurisdiction is the rule where Congress

has been silent on the question is a matter of federal law.

While precedent on direct point is unavailable, the Ninth Circuit has furnished the trial courts with a decision rich in guidance on the issue presented. The Court recently held in *Valenzuela v. Kraft*, 739 F.2d 434 (9th Cir.1984), that jurisdiction over Title VII actions is vested exclusively in the federal system. Starting with the premise that concurrent jurisdiction is presumed in the face of congressional silence, the Court proceeded to find implicit legislative intent geared toward exclusivity on two fronts. First, the underlying statute contained references to procedural mechanisms which were available only in the federal system. Second, throughout the statute's legislative history, there is no reference to any possibility that a Title VII action could be maintained in a state court.

In the instant case, if one views the statutory scheme dealing with RICO broadly, then there are most assuredly indicia militating in favor of exclusivity. See 18 U.S.C. § 1961 (predicate acts defined in terms of substantive federal crime); § 1963 (criminal prosecutions exclusively federal by unmistakable implication); § 1965 (extended venue and process provisions applicable only in federal courts); § 1966 (only United States Attorney empowered to act thereunder); § 1967 (limited to actions involving the United States); and § 1968 (only Attorney General may act thereunder). On the other hand, if one views RICO narrowly, and focuses instead only on the section affording the citizenry a private right of action; *i.e.* § 1964(c), there is absolutely nothing in the statutory language which would direct a conclusion of either exclusivity or concurrence. Nor is such legislative history as is available particularly helpful. See 1970 *Code Cong. & Ad.News*, p. 4007 *et seq.*

■ Notwithstanding the presumption in favor of concurrent jurisdiction, as mandated under *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981), this Court does not believe it appropriate to dissect a statutory

scheme, select one narrow provision thereof, and determine that with respect to that one provision at least, congressional silence is the equivalent of an affirmative grant of jurisdiction to the states which creates substantive and remedial rights unknown in the common law. Rather, where overall congressional intent is patently obvious; *viz.*, to halt expansion of organized racketeering activities,[2] it would seem more desirable, if not jurisprudentially required, to read all RICO provisions *in pari materia*,[3] and to conclude that Congress could not have intended the untoward result of creating a wholly new cause of action triable in state courts across the country, while at the same time mandating that federal substantive law governs such actions, and at the same time reserving exclusively to the federal government the procedural power necessary to implement the underlying objective. Accordingly, this Court holds that federal jurisdiction over RICO claims is exclusive.

■ Having so concluded, what follows might fairly be construed as gratuitous dicta. Nonetheless, to allay any suspicions that the foregoing discussion was result-oriented, it should be pointed out that even if Count XII were properly removable, such claim would still not satisfy the "separate and independent" requirements of 28 U.S.C. § 1441(c), and this action would still remain subject to remand.

Two modes of addressing the topic suggest themselves. The first is to compare the transactional facts alleged in Count XII with those alleged in connection with the 1933 Act claims. A facial perusal of the complaint readily yields the answer. After incorporating Count I by reference (as do three of the four 1933 Act claims), Count XII proceeds to merely plug in the requisite magic language alleging elements of interstate commerce, a pattern of fraud, and receipt and use of income derived therefrom. Without doubt, viewed from a transactional standpoint, every claim asserted is so mutually intertwined with one another as to preclude categorization as either separate or independent of the other.

The second mode which merits examination is to look to the remedy available for the conduct complained of, rather than to the conduct itself. The recovery provisions of 18 U.S.C. § 1964(c), which embrace, *inter alia*, treble damages, are obviously more attractive to a plaintiff in terms of recovery than are those remedies available under the 1933 Act.

Research has not revealed any reported decision on point. This Court is inclined to believe, however, that were the question put squarely before the Ninth Circuit, it is the first mode of analysis which would be adopted. *Cf., Byrd v. Dean Witter Reynolds, Inc.*, 726 F.2d 552 (9th Cir.), *cert. granted*, — U.S. —, 104 S.Ct. 3509, 82 L.Ed.2d 818 (1984). Having concluded that neither the requisites of 28 U.S.C. § 1441(a) or 1441(c) have been met, this action will be remanded pursuant to § 1447(c).

## II. C-84-308

■ Counts I, II, and VIII allege violations of the 1934 Act. Facially, jurisdiction is properly laid in this Court. Counts III, IV, V and VI allege violations based on the 1933 Act. These too are properly before the Court, as is Count VII which combines claims based on both the 1933 and 1934 Acts. Count XII is a RICO claim, and it also is facially proper in terms of subject-matter jurisdiction. Counts IX, X, XI, XIII and XIV are pendent state claims.

■ Up until recently, it has been common practice in this District for the Court to exercise its power to take jurisdiction over pendent claims without an inordinate amount of consideration given to the well-settled proposition that the decision to use such power is wholly discretionary:

---

**2.** See Organized Crime Control Act of 1970, Statement of Findings and Purpose, P.L. 91–452; 84 Stat. 922, *reprinted in* 1970 *U.S. Code Cong. & Ad.News* 1073.

**3.** "In construing a statute, it is the duty of the court to give significance to every word, phrase, sentence and part of an act in pursuance of the legislative purpose, and to give effect to the statute as a whole ...." *Matter of Borba*, 736 F.2d 1317, 1320 (9th Cir.1984).

The court must first decide whether the state and federal claims present a "common nucleus of operative facts so as to constitute but one constitutional case"; such a determination gives the court the power to assume jurisdiction. Second, the court must consider whether, in the exercise of its discretion, it should assert that power. The discretionary factors weighing against the assumption of jurisdiction include the possibility of jury confusion, ... the ground upon which the district court in this case relied. Thus, the power of a federal court to hear a pendent state claim need not be exercised in every case.

*Kehr v. Smith Barney, Harris Upham & Co., Inc.*, 736 F.2d 1283, 1287 (9th Cir. 1984).

■ A plaintiff has no vested right to have pendent claims heard in conjunction with those of a federal nature, but nonetheless has generally enjoyed such benefit because of the widely-held view that substantial economies accrue thereby to both litigants and the judicial system. A recent experience with a trial involving alleged securities fraud, quite similar to the instant suit in fact, has given the Court reason to re-evaluate that liberal approach.

The case referenced will not be cited, and if anyone reading this memorandum should recognize it, the Court would hasten to add that both counsel did a competent and credible job for their respective clients. But they, as was the Court, were trapped into a nightmare where the instructions, despite long hours of hard work, were virtually incomprehensible to a jury of laypersons. The problem lay in the fact that the precise same transactional facts gave rise to potential liability under both 10b–5 and R.C.W. ch. 21.20. The federal regulation requires scienter; and the state statute, given Washington's unique construction, does not. See *Kittilson v. Ford*, 93 Wash.2d 223, 608 P.2d 264 (1980).

Thus, the jury was treated to two parallel sets of instructions governing elements, definitions, vicarious liability and affirmative defenses: one of which advised the jury that it must find scienter in order to

impose liability; and one of which did not. The form of verdict required eleven special interrogatories to ensure that the jury employed the analysis it was required to under the law.

True, it may have been possible for counsel to stipulate that only the state claims need be instructed upon since, for all practical purposes, these were subsumed into the federal claims in any event, and since the remedies available under the state claims were as good, or better, than those provided under the federal scheme. There was fear on the part of all concerned, however, that an appellate panel might look at this scenario and conclude that the federal claims had been abandoned, thereby raising the specter of jurisdictional dilemmas which boggle the imagination. *But see, Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 903–04 (9th Cir.1983). True, a special interrogatory on the lone element of scienter could have been propounded, but again, both plaintiff and defendant were leary of the type of speculative confusion this might have engendered in the minds of the jurors.

■ Beyond the potential for confusion, there is a substantial policy reason why it may be inherently unwise to try federal and state claims together in the securities context, at least in Washington; and that is because in the final analysis, given the different scienter requirements, the federal claims ultimately serve no function other than as a jurisdictional hook to bring the action in this Court. The vast body of law developed by Congress and the federal judiciary over the past fifty-odd years thus serves no substantive purpose. This result can only be viewed as a perversion of the function and role of federal courts which are, after all is said and done, courts of limited jurisdiction. *Jones v. Giles*, 741 F.2d 245, 248 (9th Cir.1984).

At the risk of belaboring the point, the rationale underlying *Kittilson, supra*, is worth quoting:

The coordination of the federal courts with federal regulations does not require imitation by this court in construing our

act, only that our construction not interfere with the federal scheme.... No contention is made ... by defendant that not requiring scienter would interfere with the federal scheme.

93 Wash.2d at 227, 608 P.2d at 268.

This Court would fully concur that the result reached in *Kittilson* does not interfere with federal objectives—provided that claims brought under the state securities act remain in the state system. When they find their way into the federal system, the interference becomes both real and substantial. *Cf., Burgess v. Premier,* 727 F.2d 826, 836–37 (9th Cir.1984).[4]

 Countervailing the above considerations is the virtue of economy which flows from accepting pendent jurisdiction. *See, e.g., Albers v. Whitley,* 546 F.Supp. 726, 737 (D.Ore.1982), *modified on other grounds,* 743 F.2d 1372 (9th Cir.1984). This is most certainly a prime factor in exercising the discretionary function of accepting or rejecting pendent claims. However, since what remains of plaintiff's action in C–84–382 is being remanded to whence it came, the Court can see no loss of either substantive worth or economy in refusing to continue to exercise jurisdiction over pendent claims in the instant case. See *Wren v. Sletten Const. Co.,* 654 F.2d 529, 536 (9th Cir.1981). Accordingly, Counts IX, X, XI, XIII and XIV will be dismissed.

 With regard to those counts based on the 1933 Act, 15 U.S.C. § 77v provides that an action may be "brought in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein." The Court's view of the totality of the present record is that the Texas defendants' "transaction of business" and "participation" was so marginal, minimal, attenuated and collateral that it would offend due process to keep these defendants in the case. Accordingly, Counts III, IV, V, and VI will be dismissed as to the Texas defendants.

 In so concluding, the Court is well aware of the difference between the *International Shoe*[5] analysis applicable to extraterritorial assertions of jurisdiction by the states, and the distinct, if unsettled, due process analysis required when federal jurisdiction, venue, and process statutes are involved. Perhaps the most enlightening decision yet published in terms of framing the issues is to be found in a comparison of the majority and dissenting opinions of *Haile v. Henderson Nat. Bank,* 657 F.2d 816 (6th Cir.1981), *cert. denied,* 455 U.S. 949, 102 S.Ct. 1450, 71 L.Ed.2d 663 (1982) and authorities cited therein. Whatever may be the correct test out of the multiplicity of those posited by various courts over the years, this Court is convinced that statutes such as 15 U.S.C. §§ 77v and 78aa are to be limited and defined in terms of basic fairness as mandated by the Due Process Clause of the Fifth Amendment. *See, e.g., Black v. Acme Markets, Inc.,* 564 F.2d 681, 686, 686 n. 8 (5th Cir.1977); *Great Western United Corp. v. Kidwell,* 439 F.Supp. 420, 432 (N.D.Tex.1977); *Oxford First Corp. v. PNC Liquidating Co.,* 372 F.Supp. 191, 203 n. 24 and accompanying text (E.D.Penn. 1974).

On the present state of the record, such fairness is lacking in view of the conclusory allegations which, taken as true, do not rise to the level of "participation" as that term is employed in § 77v. This determination notwithstanding, dismissal will be without prejudice and plaintiffs will be free to amend at a future point if discovery should reveal facts which satisfy the participation requirement.

---

4. *Burgess* held that notwithstanding the difficulties visited upon the trial court in engineering instructions addressing both federal and Washington State claims, the latter did not present a federal question. Within the confines of *Burgess,* this is no doubt true. Here, however, the focus is on whether pendent jurisdiction should be accepted at all, and the federal policy implications of doing so are unmistakable.

5. *International Shoe v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

With regard to those counts based on the 1934 Act, 15 U.S.C. § 78aa provides that an action may be brought "wherein the defendant is found or is an inhabitant or transacts business." If the 1933 Act claims are deficient in this regard, then the more closely circumscribed 1934 Act claims must fall as well, and thus Counts I, II and VIII will be dismissed as to the Texas defendants.[6]

With regard to Count XII, while the RICO claim is facially within the subject-matter jurisdiction of the Court, it cannot survive a motion to dismiss for failure to state a claim in its present form. The Court declines to follow authority cited by defendants from the Second Circuit,[7] but even under controlling precedent it is clear that the present allegations are insufficient; and at a bare minimum, the claim must be restructured to satisfy the requisite elements set forth in *Rae v. Union Bank*, 725 F.2d 478 (9th Cir.1984); *Lopez v. Dean Witter Reynolds, Inc.*, 591 F.Supp. 581 (N.D.Cal.1984); and *Productions & Leasing v. Hotel Conquistador*, 573 F.Supp. 717, 724 (D.Nev.1982), *aff'd*, 709 F.2d 21 (1983).

With regard to defendants' motion for a more definite statement, this will be granted as provided below. With regard to all other motions now pending, these will be denied with leave to renote. The parties have some elections to make, and it would be premature at this time, and in light of the present state of the record, to consider these remaining contentions.

THEREFORE IT IS ORDERED that:

(1) Defendants' Motion to Consolidate is DENIED as moot.

(2) With regard to Cause No. C–84–382:

(a) Counts I, II, VIII and XII are DISMISSED.

(b) Count VII is DISMISSED insofar as it is based on the 1934 Act and REMANDED insofar as it is based on the 1933 Act.

(c) The balance of the action is REMANDED to the Yakima County Superior Court and the Clerk shall take appropriate measures to accomplish such remand.

(3) With regard to Cause No. C–84–308:

(a) As to Counts I through VIII inclusive, those persons and entities denominated as the "Texas defendants" are DISMISSED without prejudice.

(b) Count XII is DISMISSED without prejudice.

(c) Counts IX, X, XI, XIII and XIV are DISMISSED with prejudice.

(4) At any time within the next thirty days, plaintiff may restructure the complaint so as to provide a comprehensive statement of allegations concerning those claims and parties remaining in the case, and with regard to those claims and parties which have been dismissed without prejudice.

(5) The scheduling order entered on August 30, 1984 is VACATED.

(6) The parties shall confer with one another as to all subjects referenced in Fed.R. Civ.P. 16 and attempt to agree where possible on appropriate dates for inclusion in a substitute pretrial scheduling order; and shall file written report(s) setting forth such proposed dates, either jointly or separately, within the next sixty days.

(7) The Clerk shall set this matter for a telephonic status conference approximately seventy days after entry of this Order.

(8) While the Court believes that this Order is in concert with applicable legal principles, at the same time, it must be recognized that there is room for honest disagreement. Accordingly, upon request from any party, an attempt will be made to structure this Order into an immediately appealable form, insofar as matters addressed herein are amendable to appeal. See 28 U.S.C. § 1447(d).

---

6. In like manner, and for the same reasons, the Texas defendants will be dismissed as to Count VII, the "mixed bag" claim.

7. See *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 741 F.2d 482 (2nd Cir.1984), *appeal pending*.