**MAIN RUSK ASSOCIATES, Appellant,**

v.

**INTERIOR SPACE CONSTRUCTORS, INC., et al., Appellees.**

**No. 91–85–0400–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 10, 1985.

Fritz Barnett, Glickman & Barnett, Houston, for appellant.

Glen M. Boudreaux, Deborah H. Peveto, Kirklin, Boudreaux & Joseph, Houston, for appellees.

Before WARREN, SAM BASS and DUNN, JJ.

OPINION

DUNN, Justice.

This is an appeal from a district court's order of dismissal for lack of subject matter jurisdiction over claims arising under the Racketeer Influenced and Corrupt Organization Act (RICO), 18 U.S.C. sec. 1961 et seq.

The appellant, Main Rusk Associates (Main Rusk), defendant and third-party plaintiff below, filed a counterclaim and third-party action against appellee, Interior Space Constructors, Inc. (ISC), plaintiff below, and appellees, Horne Company, R.A. Horne, Sidney v. Smith, Stephen M. Montgomery, Ronald J. Hoelscher, and George Jenkes (Horne), third-party defendants below. Main Rusk's counterclaim and third party action alleged, in addition to other causes of action, that ISC and Horne had violated the RICO Act. On appellees' motion, the trial court severed and dismissed Main Rusk's claims under the RICO Act.

Main Rusk contends in its sole point of error that the trial court erred in dismissing its claim under RICO because state and

federal courts have concurrent subject matter jurisdiction over RICO causes of action. Accordingly, we must determine whether federal courts have exclusive jurisdiction over actions arising under the RICO Act.

In considering the propriety of state court jurisdiction over any particular federal claim, the court begins with the presumption that state courts enjoy concurrent jurisdiction. *Gulf Offshore Corp. v. Mobil Oil Corp.*, 453 U.S. 473, 475, 477, 101 S.Ct. 2870, 2873, 2874, 69 L.Ed.2d 784 (1981). Congress may confine jurisdiction to the federal courts either explicitly or implicitly. Therefore, the presumption of concurrent jurisdiction can be rebutted by (1) an explicit or implicit statutory directive, (2) an unmistakable implication from legislative history, or (3) a clear incompatibility between state court jurisdiction and federal interest. *Id.* at 478, 101 S.Ct. at 2875. The foregoing principles of law are not disputed by the parties.

Considering the legislative history and underlying policies, we find that the RICO Act derives its authority from the power of Congress to regulate commerce among the states. It finds its beginning in problems arising under the Crime Control Act of 1969, which was introduced for the sole purpose of strengthening federal law enforcement efforts to stamp out organized crime in the United States. *Id.* On introducing the Corrupt Organization Act of 1969, Senator McClellan urged that better techniques were needed to enforce the purpose of the Organized Crime Control Act of 1969. The proposed RICO Act would offer the use of civil techniques to assist in carrying out federal law enforcement in conjunction with the Organized Crime Control Act. *See* 115 Cong.Rec. 9566 (1969). (Introduction to the Corrupt Org. Act of 1969).

We note that Senator McClellan explained in floor debate that the act was not designed to convert every fraud, misrepresentation or other act violative of state law into a RICO action. *See* 91st Cong.Sess. S416, January 22, 1970 (Floor debate between Senator McClellan and Senator Kennedy). Further, it was emphasized at the Senate hearing that the activities to be covered by the Act were not aimed at the isolated criminal act. 115 Cong.Rec.S.1861 (daily ed. April 18, 1969) (statement by Senator McClellan).

In reviewing the RICO enforcement sections embodied in sec. 1963, which is directed toward criminal enforcement, we observe that any RICO violation will result in forfeitures to the United States and not to a state. Additionally, only the district courts of the United States are given authority to enter restraining orders or prohibitions under the Act, with authority specifically delegated to the Attorney General to seize property declared forfeited. The civil remedies, provided by sec. 1964, limit jurisdiction to the United States district courts to issue restraining orders to prevent violations as well as forfeitures and divestitures of interest as to persons found to have violated sec. 1962. Senator McClellan reasoned that these unusual methods of punishment already find precedent in the Antitrust Act (an Act within the exclusive jurisdiction of the federal courts), and are fully justified to enforce federal interest. He further justified the use in the RICO Act of such harsh and forceful remedies, which were patterned after the Antitrust Act, because of the federal government's need to protect the public interest of the United States against organized crime. 115 Cong.Rec. 9567 (1969); *cf. United States v. Dupont & Co.*, 366 U.S. 316, 326–27, 81 S.Ct. 1243, 1250, 6 L.Ed.2d 318 (1961); *see also County of Cook, v. Midcon Corp.*, 574 F.Supp. 902 (N.D.Ill.1983) (which upheld exclusive federal jurisdiction under the RICO Act based on, among other things, a comparison to the Antitrust Act).

It is apparent that the sections reviewed above are specifically directed toward federal crime enforcement. Both RICO and the Antitrust Act seek to protect the public interest of the United States as a whole. The Antitrust Act was designed to protect the public's interest in promoting competition by preventing economic concentrations of power. RICO was designed to protect

the public's interest in the economy by preventing the infiltration of organized crime into legitimate businesses. Organized crime in the U.S. is a nation-wide illegal activity and is a proper subject of enforcement by the federal courts.

Further, considering the structure and language of the Act as a whole, persuasive arguments favor exclusive federal jurisdiction. If we view the Act broadly, we find that: (1) predicate acts are defined in terms of substantive federal crimes (sec. 1961); (2) criminal prosecutions are exclusively federal by unmistakable implications (sec. 1963); (3) intended venue and process provisions are applicable only in federal courts (sec. 1965); (4) the United States Attorney is exclusively empowered to act under secs. 1966 and 1968; and (5) sec. 1967 is limited to actions involving the United States. *Kinsey v. Nestor Exploration, Ltd.*, 604 F.Supp. 1365 (E.D.Wash.1985).

A like result occurs if we view the Act narrowly. Section 1964(c) provides that any person injured in his business or property by reason of a violation of sec. 1962 may sue therefor in any appropriate United States district court. There is no statutory language in sec. 1964(c) which mandates either exclusive federal jurisdiction or concurrent jurisdiction with state courts. *Kinsey*, 604 F.Supp. at 1370. The court in *Kinsey* stated that it refused to dissect the statutory scheme of the act, select one narrow provision, and decide with respect to such a provision that "congressional silence is the equivalent of an affirmative grant of jurisdiction to the states." *Id.* at F.Supp. at 1371. The *Kinsey* court held, without reservation, that federal jurisdiction over RICO claims is exclusive. *Id.*

We agree, and find that within the structure and language of the Act, Congress has implicitly granted exclusive jurisdiction to the federal courts. Such implication is unmistakable from our review of the Act's legislative history and underlying policies.

Appellant's point of error is overruled and the judgment of the trial court is affirmed.