David N. LEVINSON, Insurance Commissioner of the State of Delaware, in his capacity as Receiver of the Estate of Tara Life Insurance Company of America, Petitioner,

and

The Delaware Life and Health Insurance Guaranty Association, Intervenor,

v.

AMERICAN ACCIDENT REINSURANCE GROUP, an unincorporated association of insurance companies transacting business in the State of Delaware, using a common name, and Duncanson & Holt, Inc., a corporation transacting business in the State of Delaware, Respondents.

Court of Chancery of Delaware, New Castle County.

Submitted: Sept. 13, 1985.

Decided: Dec. 3, 1985.

John H. Small and Wayne J. Carey of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Jonathan F. Bank, and Linda M. Lasley, of Buchalter, Nemer, Fields,

* Assigned Pursuant to *Del. Const.* Art. IV § 13(2).

Chrystie & Younger, Los Angeles, Cal., for petitioner.

Jack B. Jacobs and Josy W. Ingersoll of Young, Conaway, Stargatt & Taylor, Wilmington, for intervenor.

John J. Schreppler, II, of Richards, Layton & Finger, Wilmington, Lawrence S. Greengrass, and Andrew Maneval, of Rein, Mound & Cotton, New York City, for respondents.

WALSH, Justice.*

This case presents an issue of first impression in this state: whether federal courts have exclusive jurisdiction over cases arising under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). 18 U.S.C. §§ 1961–1968 (1982). The issue of RICO jurisdiction arises in connection with the efforts of the Insurance Commissioner of the State of Delaware ("Commissioner") to salvage the assets of Tara Life Insurance Company of America ("Tara"), an insolvent company. The Commissioner, in his capacity as Receiver of the Tara Estate, seeks the enforcement of certain reinsurance contracts entered into by Tara.

## I

American Accident Reinsurance Group ("AARG") provided reinsurance to Tara using Duncanson & Holt, Inc., ("D&H") to manage the reinsurance treaty. AARG, in turn, reinsured this treaty covering all of its liability on Tara's policies in a retrocession agreement with Tara Reinsurance Ltd. ("Tara Re") of Dublin, Ireland. Both Tara and Tara Re were subsidiaries of William H. Vaughan & Co., which owned and controlled a group of insurance companies. The Commissioner contends that the purpose of the reinsurance treaty was to improve Tara's financial reports without actually improving its financial position, since the reinsurance obligation was to be assumed by its affiliate, Tara Re. In effect, the Commissioner argues, the reinsurance arrangement was illusory and deceptive.

In August, 1982, D & H notified Tara that D & H was canceling Tara's reinsurance agreement with AARG effective October 1, 1982, for new business and effective January 1, 1983, with respect to policies already in force. Based on the cancellation of the reinsurance treaty and Tara's inability to obtain other reinsurance, on March 25, 1983, this Court entered an Order to appoint the Commissioner as the receiver responsible for conducting Tara's business. In June, 1983, AARG paid D & H $211,409 on its reinsurance obligations to Tara. Two months later, this Court entered an insolvency order with respect to Tara and all of Tara's business was transferred to Aims Enterprises, Inc.

On October 15, 1984, the Commissioner filed a petition to enforce the reinsurance treaty against AARG and D & H based on his belief that the Estate was entitled to proceeds of the reinsurance contract between Tara and AARG. In addition, since Tara's financial statements had been transmitted through the United States mail, the Commissioner amended his complaint on May 24, 1985 to include RICO claims against AARG and D & H. At the same time, the Delaware Life and Health Insurance Guaranty Association, whose members are required to satisfy the claims of insolvent insurers, intervened and filed a complaint in this action seeking the same relief.

AARG and D & H did not oppose the Guaranty Association's Motion to Intervene, and instead moved to dismiss the RICO and fraud counts. In its answer to the Amended Petition, AARG and D & H deleted certain references to its reinsurance arrangement with Tara Re which were alleged in its original Answer. The Commissioner has filed a motion to strike the Respondents' Answer to the Amended Petition because the Answer was filed without leave of this Court and contains material contrary to the position asserted in the original Answer.

II

In every case, a threshold inquiry must be made to determine whether a court has proper jurisdiction over the claim before it. State courts have concurrent subject matter jurisdiction over federal causes of action unless there is a Congressional provision precluding concurrent jurisdiction or there is disabling incompatibility between the federal claim and adjudication of that claim in a state court. *Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 507–08, 82 S.Ct. 519, 522–23, 7 L.Ed.2d 483 (1962); *Claflin v. Houseman,* 3 Otto (93 U.S.) 130, 23 L.Ed. 833 (1876). Thus, in considering the propriety of state court jurisdiction over a federal claim, this Court will indulge the presumption that state courts usually enjoy concurrent jurisdiction over federal causes of action. *See Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 479, 101 S.Ct. 2870, 2875, 69 L.Ed.2d 784 (1981).

Despite this presumption of concurrent jurisdiction, Congress may explicitly or implicitly limit jurisdiction over federal claims to the federal courts. *Id.* Specifically, the presumption of concurrent jurisdiction can be rebutted by an explicit statutory directive, by an unmistakable implication from legislative history, or by clear incompatibility between federal interests and state court jurisdiction. *Id.* The factors that favor exclusive federal court jurisdiction over federal claims include the desirability of uniform interpretation of federal law, the expertise of federal judges in federal matters, and the greater hospitality of federal courts to federal claims. *Id.* at 484–85, 101 S.Ct. at 2878. To determine whether Congress intended state courts to have concurrent jurisdiction over a federal claim, the courts may examine the language, structure, legislative history, and underlying policies of the federal legislation. *Id.* at 485, 101 S.Ct. at 2878. *See Kinsey v. Nestor Exploration Ltd.,* 604 F.Supp. 1365, 1370 (E.D.Wash.1985) (exclusive federal jurisdiction in RICO actions); *Valenzuela v. Kraft,* 739 F.2d 434 (9th Cir.1984) (exclusive federal jurisdiction in Title VII actions).

The jurisdictional language of the RICO Act does not explicitly limit jurisdic-

tion to the federal courts. *See* 18 U.S.C. § 1964(c); *Gulf Offshore,* 453 U.S. at 479, 101 S.Ct. at 2875; *County of Cook v. Midcon Corp.,* 574 F.Supp. 902, 912 (N.D.Ill. 1983); *Luebke v. Marine National Bank of Neenah,* 567 F.Supp. 1460 (E.D.Wis. 1983). But the inquiry into the exclusivity of jurisdiction under the Act does not end there. The structure, language, legislative history, and underlying policies of the Act must be examined to determine Congress' jurisdictional intent. *Gulf Offshore,* 453 U.S. at 479, 485, 101 S.Ct. at 2875, 2878.

Although there is some debate over whether RICO was patterned after the antitrust laws,[1] the jurisdictional language in the RICO Act is nearly identical to the jurisdictional provision of the Clayton Act. *Compare* 18 U.S.C. § 1964(c) *with* 15 U.S.C. § 15 (1973 & Supp.1985). The jurisdictional provision in the Clayton Act has been consistently interpreted to confer exclusive jurisdiction on federal courts for claims arising under the statute. See *Midcon,* 574 F.Supp. at 912 and citations therein. Furthermore, there is some evidence that Congress consciously followed the antitrust laws in drafting the jurisdictional provision of the RICO statute. *Midcon,* 574 F.Supp. at 912 *citing* 115 Cong.Rec. 6992–93 (1969); *see Bruns II v. Ledbetter,* 583 F.Supp. 1050, 1056 (S.D.Cal.1984).

Since it is an accepted principle of statutory construction that the legislature has constructive knowledge of judicial interpretations of existing statutes when drafting new legislation, *State v. 0.0673 Acres of Land,* Del.Supr., 224 A.2d 598 (1966), Congress' adoption of a jurisdictional provision in RICO which is nearly identical to a provision of the Clayton Act which had been interpreted to confer exclusive jurisdiction on the federal courts weighs heavily in favor of exclusive jurisdiction over RICO claims. In addition, courts considering the exclusivity of federal court jurisdiction over RICO claims have noted other specific aspects of the structure and language of the Act which favor exclusive federal jurisdiction.[2] The reasoning of these decisions is persuasive. The structure, language, and legislative history of the jurisdictional provision of the RICO Act favor exclusive jurisdiction for federal courts in these matters.

Moreover, the broad purpose of the RICO Act, to aid in eliminating organized crime in the United States, is best served by exclusive federal jurisdiction. Exclusive jurisdiction will undoubtedly facilitate uniform interpretation of the statute and furnish litigants with the expertise of federal judges in causes of action arising under this federal law. *See Greenview,* 489 N.Y. S.2d at 504. Finally, the growing number of state legislatures adopting their own "state RICO" statutes is further evidence of the recognized incompatibility between state court jurisdiction and federal interests under the RICO Act. *See Kinsey,* 604 F.Supp. at 1370.

Respondents' Motion to Dismiss is therefore granted.

### III

The Commissioner has also filed a Motion to Strike Respondents' Answer to the Amended Petition on the grounds that Respondents' Answer violated Chancery Rules 15(a) and 11. The Commissioner alleges that Respondents have attempted to withdraw admissions from their Second Counterclaim and have violated Rule 15(a) because they did not receive permission of the Court to withdraw the counterclaim.

1. *See Sedima, S.P.R.L. v. Imrex Co.,* —— U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); *Sedima, S.P.R.L. v. Imrex Co.,* —— U.S. ——, 105 S.Ct. 3292, 87 L.Ed.2d 361 (1985) (Marshall, Brennan, Blackmun, Powell, JJ., dissenting).

2. *See Kinsey,* 604 F.Supp. at 1370; *Midcon,* 574 F.Supp. at 912; *Main Rusk Associates v. Interior Space Constructors, Inc.,* 699 S.W.2d 305 (1st Tex.Ct.App.1985); *Greenview Trading Co. v.*

*Hershman & Leicher, P.C.,* 108 A.D.2d 468, 489 N.Y.S.2d 502 (1985); *but see Luebke,* 567 F.Supp. at 1462 (concurrent jurisdiction found by applying only the first part of the *Gulf Offshore* test); *Lavay Corp. v. First National Bank of Maryland,* No. 83–1020 (Cir.Ct. Prince Georges County, March 5, 1984) (concurrent jurisdiction based on summary analysis of Gulf Offshore).

The purpose of pleading is to facilitate a proper decision on the merits of a claim. *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). More specifically, Rule 15(a) was drafted to facilitate a decision on the merits, not as an end in itself. *Bellanca Corp. v. Bellanca*, Del. Supr., 169 A.2d 620, 622 (1961). Based on the record before this Court, I am satisfied that there was no material violation of either Rule 11 or Rule 15(a) in this case. The allegations in the Amended Answer seem to have been made in good faith, based on new information discovered by the Respondents. At this early stage in the litigation, I see no need to decide the ultimate effect of the inconsistency in Respondents' second answer. Such inconsistency may have probative effect as impeachment evidence to the extent the Answer is verified. However, for present purposes, I see no prejudice by allowing the Respondents' answers to stand. Petitioner's Motion to Strike Respondents' Answer to the Amended Petition is denied.

An appropriate order should be submitted.