**Norman KAREL, Plaintiff,**

v.

**Errol KRONER, Susan Kroner, Richard Gladstone and Christy Doonan, Defendants.**

**No. 84 C 6591.**

United States District Court, N.D. Illinois, E.D.

May 27, 1986.

George B. Collins, Collins & Uscian, Chicago, Ill., for plaintiff.

Michael Pritzker, Warren Wexler, Lorna Propes, Kane, Obbish & Propes, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

Norman Karel ("Plaintiff") filed a two-count amended complaint on January 24, 1984, alleging that defendants Errol Kroner ("Kroner"), Susan Kroner, Richard Gladstone ("Gladstone") and Christy Doonan ("Doonan") (collectively "Defendants") engaged in a scheme to defraud Plaintiff by charging him inflated prices for the purchase, maintenance and training of standard bred race horses. In Count I, Plaintiff alleges a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* Count II is a pendent claim of common law fraud.

Presently before this court are Gladstone and Doonan's motions to dismiss Plaintiff's complaint on various grounds. The following allegations are relevant to Defendants' motions.

Sometime prior to December, 1980, Kroner, Gladstone and Doonan entered into a conspiracy to defraud Plaintiff. At Defendants' instigation, Plaintiff agreed to purchase interests, ranging from fifty percent to ninety percent, in five different race horses over a period of about two years. Kroner and Gladstone represented that the three of them were to be partners in the horses and share in the training expenses and winnings in accordance with their ownership interests.

The horses were all purchased from or through Doonan, in one instance in Ohio, and were subsequently boarded and trained by Doonan. Doonan sent monthly statements through the United States mail to Plaintiff, in the names of Plaintiff, Gladstone and Kroner, for boarding and training expenses. Plaintiff sent monthly checks directly to Doonan for his share of the expenses.

In September 1982, Plaintiff learned that he had paid more than the purchase price of each horse, and Kroner and Gladstone had paid nothing for their interests in the horses and had received from Doonan kickbacks from Plaintiff's expenditures. The monthly bills sent by Doonan were inflated, so that Plaintiff paid in full the boarding and training expenses of the horses, while Kroner and Gladstone paid nothing. Plaintiff alleges he suffered actual damages in the amount of $186,625.00 and, in accordance with 18 U.S.C. § 1964(c), he seeks to recover treble damages, costs and attorney's fees.

Nearly two years prior to filing his complaint in this court, Plaintiff filed a complaint of fraud, based on the foregoing allegations, in the Chancery Division of the Circuit Court of Cook County, Illinois, naming Doonan and Gladstone as defendants. That court held that Doonan, in conspiracy with others, defrauded Plaintiff in connection with Plaintiff's purchase of interests in five standard bred race horses. The case was dismissed without prejudice as to defendant Gladstone by reason of a pending bankruptcy petition, but judgment was entered against Doonan in the amount of $115,333.00. *Karel v. Doonan and Gladstone*, 82 CH 7624 (Chancery Division, Circuit Court of Cook County, Illinois, June 1, 1985).

In the present case, both Doonan and Gladstone move this court to dismiss Plaintiff's complaint on the grounds that Count I fails to state a claim under RICO and that, accordingly, Count II, a pendent state claim, must be dismissed for lack of federal jurisdiction. Doonan also contends that Counts I and II are barred by principles of *res judicata* and collateral estoppel.

We first address the issue in both motions to dismiss, namely, whether Plaintiff's complaint adequately pleads a violation of RICO. Defendants contend Plaintiff has failed to plead the "enterprise" element of 18 U.S.C. § 1962(c). The section provides, in relevant part:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

An "enterprise" is defined as "any individual, partnership, corporation, association or other legal entity, and any group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Because Plaintiff does not allege in his complaint the existence of any legal entity formed by Defendants, we must determine whether Plaintiff has pled an "association in fact" of Defendants which satisfies the enterprise requirement.

Plaintiff contends that the association of Kroner, Gladstone and Doonan for the purchase and training of race horses, as detailed in his complaint, satisfies the enterprise requirement. In support of his argument, Plaintiff relies upon the Supreme Court's liberal definition of an enterprise in *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528-29, 69 L.Ed.2d 246 (1981). The Court in *Turkette* specified as one type of enterprise "a group of persons associated together for a common purpose of engaging in a course of conduct." *Id.* The existence of such an enterprise is proved "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id.* This proof must go beyond proof of the "pattern of racketeering activity" which also most be proved in order to satisfy RICO. The *Turkette* Court stated:

While the proof used to establish the separate elements may in particular cases coalesce, proof of one does not necessarily establish the other. The "enterprise" is not the "pattern of racketeering activity;" it is an entity separate and apart from the pattern of activity in which it engages.

*Id.*

■ Gladstone argues that Plaintiff fails to state a RICO violation because he does

not allege an enterprise apart from the predicate acts of racketeering. We disagree. Plaintiff alleges an ongoing organization; indeed, Plaintiff was led to believe he was a member of a partnership. The organization purchased horses on five occasions. For each purchase, Kroner and Gladstone acted as salesmen, and purported to act as investors, Doonan acted as seller or sales agent, boarder and trainer of the horses, and as treasurer. Monthly bills were sent in the names of the purported partners.

A less structured organization served as the enterprise in *United States v. Aleman*, 609 F.2d 298 (7th Cir.1979), in which the Seventh Circuit affirmed a criminal RICO conviction based on evidence that the defendants planned and executed three home robberies. The defendants there used a particular club as a meeting place. One defendant paid the others for carrying out the robberies. The court considered that organization a RICO enterprise and compared it to a small business, with a "proprietor," "business office," and a "limited payroll." *Id.* at 305. According to the allegations as described above, Defendants here similarly operated what amounted to a small business. We find that in this case, under the instructions in *Turkette* and the example of *Aleman*, the enterprise requirement is satisfied.

■ Doonan contends that the complaint fails to meet RICO's "interstate commerce" requirement. All that need be pled is facts showing that the enterprise in some way affects interstate commerce through any of its activities, including the alleged racketeering activities. *See United States v. Conn*, 769 F.2d 420, 423–24 (7th Cir.1985). Plaintiff here meets that requirement simply by alleging that Doonan purchased one of the horses for the Illinois enterprise out of state, in Ohio.

Hence, Plaintiff has stated a claim under RICO. The next inquiry is whether under the full faith and credit statute, 28 U.S.C. § 1738, we must treat the state court adjudication against Doonan as *res judicata* to a RICO action against him by operation of

Illinois *res judicata* rules. *See Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327, 1335, 84 L.Ed.2d 274 (1985); *County of Cook v. MidCon Corp.*, 773 F.2d 892, 904–08 (7th Cir.1985) (RICO carries no implied repeal of full faith and credit statute).

The determination under Illinois law depends on whether federal courts have exclusive jurisdiction over RICO actions. If so, then under this Court's interpretation of Illinois law in *Marrese v. American Academy of Orthopaedic Surgeons*, 628 F.Supp. 918 (N.D.Ill.1986), the prior adjudication in state court would not bar Plaintiff from pursuing an exclusively federal claim based on the same underlying transactions. If, on the other hand, Illinois courts have concurrent jurisdiction over RICO claims, Illinois *res judicata* rules would bar this action which could have been brought as part of the prior suit in state court, *see id.* at 920–22.

Over a century ago, in *Claflin v. Houseman*, 93 U.S. (3 Otto) 130, 23 L.Ed. 833 (1876), the Supreme Court announced a presumption of concurrent jurisdiction over federal causes of action. "[T]he state court has jurisdiction where it is not excluded by express provision, or by incompatibility in its exercise arising from the nature of the particular case." *Id.*, 93 U.S. at 136. This presumption, which "has remained unmodified through the years." *Charles Dowd Box Co. v. Courtney*, 368 U.S. 502, 508, 82 S.Ct. 519, 523, 7 L.Ed.2d 483 (1962), *see generally* Annot., 69 L.Ed.2d 1136, is thought to reflect the understanding of the founding fathers, as seen in their writings and debates, and in Article III and the supremacy clause of the Constitution. *See* Redish & Muench, *Adjudication of Federal Causes of Action in State Court*, 76 Mich.L.Rev. 311, 314 (1976).

"[T]he presumption of concurrent jurisdiction can be rebutted by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests." *Gulf Offshore*

Co. v. Mobil Oil Corp., 453 U.S. 473, 478, 101 S.Ct. 2870, 2875, 69 L.Ed.2d 784 (1981) (citations omitted). The latter possibility, "clear incompatibility," involves considerations such as "the desirability of uniform interpretation, the expertise of federal judges in federal law, and the assumed greater hospitality of federal courts to peculiarly federal claims." Id. at 483–84, 101 S.Ct. at 2877–78 (footnote omitted).

■ The first possibility is absent here; RICO does not expressly limit jurisdiction to federal courts. The section of the statute creating a private right of action states, "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of his suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c). The Supreme Court has held that equivalent language in a different statute, "[s]uits ... may be brought in any district court of the United States ...," 29 U.S.C. § 185(a), grants jurisdiction to federal courts but "does not state nor even suggest that such jurisdiction shall be exclusive." Charles Dowd Box Co., 368 U.S. at 506, 82 S.Ct. at 522.

Hence, courts examining this question have focused on the other two possibilities for rebutting the presumption, i.e. that the legislative history of RICO carries an "unmistakable implication" of intended exclusive jurisdiction, or that a "clear incompatibility" makes state courts an improper forum for RICO actions. The courts have divided in their analyses. Compare Kinsey v. Nestor Exploration, Ltd.—1981A, 604 F.Supp. 1365, 1370–71 (E.D.Wash. 1985); County of Cook v. Midcon Corp., 574 F.Supp. 902, 911–12 (N.D.Ill.1983), aff'd 773 F.2d 892 (7th Cir.1984); Maplewood Bank and Trust Co. v. Acorn, Inc., 207 N.J.Super. 590, 593–94, 504 A.2d 819, 820–21 (1985); Greenview Trading v. Hershman & Leicher, P.C., 108 A.D.2d 468, 473, 489 N.Y.S.2d 502, 506 (1985) (all holding that federal courts have exclusive jurisdiction over RICO actions) with Luebke v.

Marine National Bank, 567 F.Supp. 1460, 1462 (E.D.Wis.1983); Cianci v. Superior Court, 40 Cal.3d 903, 221 Cal.Rptr. 575, 576–82, 710 P.2d 375, 376–83 (1985) (both holding that state courts have concurrent jurisdiction), but see id., 221 Cal.Rptr. at 588, 710 P.2d 375 at 388 (Lucas, J., concurring and dissenting). The Circuit Courts of Appeals have not yet tackled this issue, although the Seventh Circuit has indicated a leaning toward finding concurrent jurisdiction. See Midcon, 574 F.Supp. at 905 n. 4.

Courts finding exclusive federal jurisdiction primarily rely on the following three factors. First, Congress patterned § 1964(c) of RICO after the private remedy provision of the Clayton Act, 15 U.S.C. § 15, which courts had interpreted for nearly fifty years prior to the enactment of RICO as giving exclusive federal jurisdiction, see e.g., General Investment Co. v. Lake Shore & M.S.R. Co., 260 U.S. 261, 43 S.Ct. 106, 67 L.Ed. 244 (1922). But see Redish & Muensch, supra, at 316–17; Marrese v. American Academy of Orthopaedic Surgeons, 726 F.2d 1150, 1152 (7th Cir.1984), rev'd. on other grounds, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985) (questioning whether sound rationales support exclusive federal antitrust jurisdiction). While courts do not contend that any particular rationale for finding exclusive federal jurisdiction over antitrust claims governs the decision as to jurisdiction under RICO, they reason that legislative intent as to RICO can be inferred because, in borrowing the Clayton Act language, legislators must have intended to copy the exclusive jurisdiction that had long existed for antitrust claims. See MidCon, 574 F.Supp. at 912; Acorn, 504 A.2d at 820–21.

Second, courts find that virtually every provision of RICO suggests that Congress envisioned only federal enforcement: 18 U.S.C. § 1961(1) defines certain types of "racketeering activity" with reference to other federal statutes, 18 U.S.C. § 1963 gives federal courts and the federal government special powers in criminal procedures, 18 U.S.C. § 1964 gives federal

courts power to order special civil remedies such as divestment; 18 U.S.C. § 1965 provides federal courts with extended venue and subpoena powers; 18 U.S.C. § 1966 authorizes the United States Attorney General and his designees to recommend expedited treatment of RICO lawsuits filed in federal court; 18 U.S.C. § 1967 authorizes closed proceedings when brought by the United States; and 18 U.S.C. § 1968 authorizes the Attorney General and his designees to make investigative demands. Thus, some courts believe that the statute, read as a whole, creates an unmistakable inference of intended exclusive federal jurisdiction. *See Kinsey*, 604 F.Supp. at 1370–71; *Cianci*, 221 Cal.Rptr. at 589–91 (Lucas, J., concurring and dissenting).

Third, some courts believe either that Congress did not intend for state courts to confront the complex questions of federal law interpretation under RICO which have divided the federal courts, or that, because of its complexity, RICO is incompatible with state court adjudication. These courts express concern that state courts lack expertise in the area and will not contribute to uniform interpretation of the statute. *See Kinsey*, 604 F.Supp. at 1371; *Acorn*, 504 A.2d at 821; *Cianti*, 221 Cal.Rptr. at 591–92 (Lucas, J., concurring and dissenting); *Greenview*, 489 N.Y.S.2d at 506.

Counter-arguments have been offered, most cogently by the California Supreme Court, as follows. As to the first factor, the borrowing of language from the Clayton Act, a majority of the California Supreme Court found that this fact does not create the necessary "unmistakable implication" of intent to limit jurisdiction. Considering the legislative history of RICO, the court determined that Congress never considered the question of jurisdiction but rather was concerned with providing a private enforcement mechanism to supplement governmental enforcement, as provided under the antitrust laws. *See Cianci*, 221 Cal.Rptr. at 578–79. The court further reasoned that a jurisdictional limitation on RICO would be *inconsistent* with Congress' stated desire to encourage private enforcement and achieve the statute's broad remedial purpose. *Id.* at 579. To the same end, the Seventh Circuit recently commented, albeit in dicta, on the limited inference to be drawn from the borrowing of the Clayton Act language:

> We doubt whether the analogy to antitrust law is sufficiently strong to conclude that because jurisdiction over antitrust cases is exclusively federal, RICO jurisdiction necessarily must follow suit. *See Sedima, S.P.R.L. v. Imrex Co., Inc.,* — U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); *Schacht v. Brown*, 711 F.2d 1343, 1358 (7th Cir.) *cert. denied*, 464 U.S. 1002, 104 S.Ct. 508, 509, 78 L.Ed.2d 698 (1983). Particularly in light of the normal presumption that state courts share concurrent jurisdiction over federal statutes, we would be reluctant to conclude from congressional silence that Congress intended to depart from the usual rule. *Cf. Greenview Trading Co. v. Hershman & Leicher, P.C.,* 108 A.D.2d 468, 489 N.Y.S.2d 502 (court quotes "principal draftsman of RICO," Professor G. Robert Blakely, for the proposition that there is nothing on the face of the statute or in the legislative history that touches on the question of concurrent jurisdiction, although if Congress had considered the question, it would have made jurisdiction exclusively federal).

*County of Cook v. MidCon Corp.,* 773 F.2d 892, 905 n. 4 (7th Cir.1985).

The California Supreme Court did not directly address the second factor mentioned above, the extensive reference throughout RICO to federal enforcement. The court noted, however, that RICO's "racketeering activity" definition, 18 U.S.C. § 1961(1), incorporates state as well as federal law. *Cianci*, 221 Cal.Rptr. at 581.

As to the third factor, the *Cianci* court found no "clear incompatibility" between RICO and state court enforcement. The court's strongest arguments here are that federal judges have no special expertise in

RICO; indeed, RICO suits are most commonly aimed against "garden variety fraud," within the greater expertise of state courts, *id.* at 580 n. 3, 581. Further, state courts are hospitable to RICO claims, as evidenced by the enactment of "little RICO" statutes in the majority of states. *Id.* at 581.

■ This is a close question with strong arguments on each side. We find no new clues in the legislative history. On balance, we believe there are insufficient grounds to meet the test for rebutting the presumption of concurrent jurisdiction. The various provisions of RICO, and perhaps the borrowing of language from the Clayton Act, show that Congress envisioned RICO suits in federal court. But we need an unmistakable implication that Congress not merely assumed litigation would be federal, but intended to prohibit state litigation. Given the absence of indication that Congress even considered the issue, as well as the intended breadth and remedial goals of RICO, we cannot find the required implication. Nor do we see anything peculiar to RICO which is incompatible with state court jurisdiction. Over-expansive though the statute may be, we have no principled basis for drawing the line at state adjudication.

■ We therefore find that state courts have concurrent jurisdiction of RICO claims. Accordingly, Plaintiff could have brought his RICO claim along with his fraud claims in state court. He was not obligated to forego a federal forum; if desiring, he could have pursued the RICO claim in federal court, either simultaneously with his state court lawsuit, or with pendant state claims. Not having done so, he is now barred from maintaining his action against Doonan. Of course, Count II, the pendant state claim, is also barred as to Doonan. As a result, we dismiss Doonan from the complaint. For the reasons discussed above, the complaint otherwise stands.