[Nos. 53666-0, 53729-1. En Banc. September 24, 1987.]

DONALD RICE, *Respondent,* v. GEORGE JANOVICH, ET AL, *Appellants.*

WALLACE AUTY, ET AL, *Appellants,* v. JOHN DOE BALLARD, ET AL, *Respondents.*

*David A. Bateman, Special Prosecuting Attorney, David*

*P. Hansen,* and *Robert L. Wilson,* for appellants Janovich, et al.

*McCarthy, Holum, Golob & Causseaux, Inc., P.S.,* by *Patricia D. Rourke,* for appellants Auty, et al.

*W. Bernard Bauman,* for respondent Rice.

*Houger, Miller & Stein, P.S.C.,* by *Robert M. Stein,* for respondents Ballard, et al.

*Wayne C. Fricke,* for respondents McDonald, et al.

DOLLIVER, J.—In these two consolidated cases, the initial issue to be determined on review is whether state courts have concurrent jurisdiction over civil actions arising under the racketeer influenced and corrupt organizations provisions, 18 U.S.C. § 1964 (1976) (RICO).

### Rice v. Janovich

Plaintiff Donald Rice brought this action against defendants George Janovich, John Joseph Carbone, Joseph M. Carbone, and Ronald John Williams, for injuries resulting from the fire bombing of the Night Moves Tavern in Pierce County, where he was employed as janitor and night watchman. On February 5, 1978, while at work Rice was approached by masked, armed assailants who grabbed him, held a gun to his head and told him they were going to "[b]low [his] head off . . ." They bound his hands and ankles and taped his mouth shut, then dragged him by the ankles, face down, through the tavern and down a staircase to the kitchen. The tavern was then fire bombed. Rice yelled for help and was eventually rescued from the tavern.

Rice sued under theories of assault, outrage, and violation of the RICO provisions (18 U.S.C. § 1964 (1976)). The jury returned a verdict in favor of the plaintiff for $500,000 and specifically apportioned liability between the defendants, attributing $150,000 liability to John Joseph Carbone, $150,000 to Joseph M. Carbone, $150,000 to Ronald J. Williams, and $50,000 to George Janovich. The trial court, relying on the provisions of RICO, trebled the amount for a

total judgment of $1,500,000, plus $500,000 attorney fees and $1,304.30 costs.

Defendants Janovich, Joseph M. Carbone, and Williams appealed from the judgment to the Court of Appeals. After all the briefs had been filed, the defendants filed a motion to dismiss all claims based on RICO for lack of subject matter jurisdiction. The Court of Appeals then certified the case to this court for resolution of the motion and the remaining issues forming the basis for the appeal.

## Auty v. Ballard

The plaintiffs brought this civil action for damages against a number of defendants, alleging violations of the state securities laws, the state consumer protection act, and common law fraud. The plaintiffs later amended the complaint, adding a cause of action under RICO. The trial court granted the defendants' motion to dismiss the RICO claim for lack of subject matter jurisdiction.

The plaintiffs appealed to the Court of Appeals. The defendants' motion for direct review by this court and consolidation with the Rice case was granted pursuant to RAP 4.2 and 4.3.

## I

Do state courts have concurrent subject matter jurisdiction over actions brought under 18 U.S.C. § 1964(c) (civil RICO)?

█ The defendants from both consolidated cases challenge the jurisdiction of a state court over federal civil RICO actions. The settled test for determining whether state courts have jurisdiction over a federal cause of action was set forth in *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 477–78, 69 L. Ed. 2d 784, 101 S. Ct. 2870 (1981). There the Court stated:

[S]tate courts may assume subject–matter jurisdiction over a federal cause of action absent provision by Congress to the contrary or disabling incompatibility between the federal claim and state–court adjudication.

Beginning with "the presumption that state courts enjoy

concurrent jurisdiction" the Court then specified:

> [T]he presumption of concurrent jurisdiction can be rebutted by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state–court jurisdiction and federal interests.

*Gulf Offshore Co.,* at 478. *See also Pioneer First Fed. Sav. & Loan Ass'n v. Pioneer Nat'l Bank,* 98 Wn.2d 853, 863, 659 P.2d 481 (1983) (finding concurrent jurisdiction over claims arising under the Federal Trademark Act; "[e]xclusive jurisdiction should not be presumed"); Redish & Muench, *Adjudication of Federal Causes of Action in State Court,* 75 Mich. L. Rev. 311, 314 (1976) (presumption of concurrent jurisdiction reflects the understanding of the framers of the constitution).

Section 1964(c) of 18 U.S.C., creating the federal cause of action at issue here, provides:

> Any person injured in his business or property by reason of a violation of [18 U.S.C. § 1962, the criminal RICO statute] may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

This statute contains no "explicit statutory directive" overcoming the presumption of concurrent jurisdiction. The grant of jurisdiction to federal courts does not by itself make federal jurisdiction exclusive. *Gulf Offshore Co.,* at 479 ("[i]t is black letter law . . . that the mere grant of jurisdiction to a federal court does not operate to oust a state court from concurrent jurisdiction over the cause of action"); *see also Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 506, 7 L. Ed. 2d 483, 82 S. Ct. 519 (1962) (holding similar language grants federal jurisdiction but "does not state nor even suggest that such jurisdiction shall be exclusive").

The issue, then, is whether the concurrent jurisdiction presumption has been overcome by either an "unmistakable implication" in the legislative history intending exclusive

jurisdiction, or a "clear incompatibility" making state courts an improper forum for RICO actions. The United States Supreme Court has not yet decided this issue. The only federal court of appeals which has discussed the issue strongly suggested it would find concurrent jurisdiction, but did not decide the issue. *County of Cook v. Midcon Corp.,* 773 F.2d 892, 905 n.4 (7th Cir. 1985).

Other courts, including federal district courts and state courts, have divided on this issue. Courts finding exclusive federal jurisdiction have relied primarily on three factors. First, Congress patterned section 1964(c) after the private remedy provision of the Clayton Act, 15 U.S.C. § 15 (1976), which courts have long interpreted as giving exclusive federal jurisdiction. *See, e.g., General Inv. Co. v. Lake Shore & M.S. Ry.,* 260 U.S. 261, 67 L. Ed. 244, 43 S. Ct. 106 (1922); *but see* Redish & Muench, 75 Mich. L. Rev. at 316–17; *Marrese v. American Academy of Orthopaedic Surgeons,* 726 F.2d 1150, 1152 (7th Cir. 1984) (questioning whether sound rationales support the finding of exclusive federal antitrust jurisdiction), *rev'd on other grounds,* 470 U.S. 373, 84 L. Ed. 2d 274, 105 S. Ct. 1327 (1985). Some courts have found the analogy to antitrust law provides sufficient implication of exclusivity. *Massey v. Oklahoma City,* 643 F. Supp. 81, 84 (W.D. Okla. 1986); *Levinson v. American Accident Reinsurance Group,* 503 A.2d 632 (Del. Ch. 1985); *Greenview Trading Co. v. Hershman & Leicher, P.C.,* 108 A.D.2d 468, 489 N.Y.S.2d 502 (1985).

Second, some courts find it "untoward" to allow state court jurisdiction where most of the provisions of the RICO legislation are addressed to federal enforcement. *Kinsey v. Nestor Exploration Ltd.,* 604 F. Supp. 1365, 1371 (E.D. Wash. 1985). For example, 18 U.S.C. § 1964(a) and (b) authorize the United States Attorney General to seek equitable relief and give the federal courts power to order special remedies; 18 U.S.C. § 1965 provides federal courts with extended venue and subpoena powers; and 18 U.S.C. § 1966 authorizes the United States Attorney General and his designees to recommend expedited treatment of RICO lawsuits

filed in federal court. Thus, certain courts find the statute, read as a whole, creates the necessary "unmistakable implication" of intended exclusivity. *See Kinsey v. Nestor Exploration Ltd., supra; Spence v. Flynt,* 647 F. Supp. 1266 (D. Wyo. 1986); *Main Rusk Assocs. v. Interior Space Constructors, Inc.,* 699 S.W.2d 305 (Tex. Ct. App. 1985).

Third, as stated by the court in *Karel v. Kroner,* 635 F. Supp. 725, 730 (N.D. Ill. 1986):

> [S]ome courts believe either that Congress did not intend for state courts to confront the complex questions of federal law interpretation under RICO . . . or that, because of its complexity, RICO is incompatible with state court adjudication. . . . *See Kinsey,* 604 F. Supp. at 1371 . . .

(Remaining citations omitted.)

Courts finding concurrent jurisdiction offer responses to each of these arguments. Congress' borrowing of language from the Clayton Act as a model for the civil RICO provision does not alone create the necessary "unmistakable implication" of exclusivity. *Karel v. Kroner, supra; Cianci v. Superior Court,* 40 Cal. 3d 903, 710 P.2d 375, 221 Cal. Rptr. 575 (1985). Several courts have noted that the principal draftsman of RICO, G. Robert Blakey, chief counsel to the Senate Subcommittee on Criminal Laws and Procedures, which proposed RICO, stated:

> "'There is nothing on the face of the statute or in the legislative history' that touches on the question of concurrent jurisdiction. . . . 'To my knowledge, no one even thought of the issue.'"

*Cianci,* at 912 (quoting Flaherty, *Two States Lay Claim to RICO,* Nat'l L.J., May 7, 1984 at 10, col. 2); *County of Cook v. Midcon Corp., supra* at 905 n.4; *Karel v. Kroner, supra* at 730–31. Silence in the legislative history cannot satisfy the "unmistakable implication" test of *Gulf Offshore Co. See Contemporary Servs. Corp. v. Universal City Studios, Inc.,* 655 F. Supp. 885 (C.D. Cal. 1987); *Chas. Kurz Co. v. Lombardi,* 595 F. Supp. 373, 381 n.11 (E.D. Pa. 1984); *County of Cook v. Midcon Corp., supra* at 905 n.4 ("[p]articularly in light of the normal presumption that state

courts share concurrent jurisdiction over federal statutes, we would be reluctant to conclude from congressional silence that Congress intended to depart from the usual rule"). Further, the United States Supreme Court has indicated the analogies to antitrust law should not be interpreted to limit the availability or scope of RICO actions. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 498–99, 87 L. Ed. 2d 346, 105 S. Ct. 3275, 3286–87 (1985).

Any legislative intent discernible from the language of the legislation itself indicates concurrent jurisdiction should be exercised. The legislation specifically states it is to "be liberally construed to effectuate its remedial purposes." Pub. L. No. 91–452, § 904(a), 84 Stat. 947 (1970). As stated in *Sedima,* at 498, those "'remedial purposes' are nowhere more evident than in the provision of a private action for those injured by racketeering activity." Concurrent jurisdiction would be consistent with this liberal construction. *See Gulf Offshore Co.,* at 478 n.4 ("[p]ermitting state courts to entertain federal causes of action facilitates the enforcement of federal rights").

Courts finding concurrent jurisdiction have also noted the absence of any "clear incompatibility" between RICO and state court jurisdiction. Federal judges have no special expertise in RICO; indeed RICO suits have been most commonly aimed at "garden variety fraud", which are within the greater expertise of state courts. *Cianci,* at 914 n.3; *Karel,* at 730–31. Nor are state courts inhospitable to RICO claims: a majority of states, including Washington, have enacted "little RICO" statutes. *Cianci,* at 916; *Karel,* at 731; RCW 9A.82. RICO provides neither the explicit statutory direction or unmistakable implication of exclusivity, nor clear incompatibility with state court jurisdiction sufficient to overcome the presumption of concurrent jurisdiction. Concurrent jurisdiction is not inconsistent with the language of the statute or its legislative history. We hold the courts of this state have concurrent jurisdiction under RICO.

We remand Auty v. Ballard to the trial court for further

proceedings and now consider the other issues on appeal raised by the defendants in Rice v. Janovich.

## II
### Did the trial court err in admitting the testimony of plaintiff's expert witnesses?

The defendants challenge the admission of the testimony of two expert witnesses since the plaintiff did not provide the names of the witnesses to the defense until sometime during the trial. In response the plaintiff asserts the defense had notice he would present the type of testimony offered by the experts and the exclusion of the testimony would be an improper remedy for any failure to disclose since it was not intentional or unconscionable.

CR 26(e)(1) requires a party

> seasonably to supplement his response [to a request for discovery] with respect to any question directly addressed to . . . the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony.

CR 26(e)(4) states failure to comply with the rule "will subject the party to such terms and conditions as the trial court may deem appropriate." In *Fred Hutchinson Cancer Research Ctr. v. Holman,* 107 Wn.2d 693, 732 P.2d 974 (1987), we recently stated:

> With regard to alleged discovery violations, "it is an abuse of discretion to exclude testimony as a sanction absent any showing of intentional nondisclosure, willful violation of a court order, or other unconscionable conduct."

*Holman,* at 706 (quoting *Smith v. Sturm, Ruger & Co.,* 39 Wn. App. 740, 750, 695 P.2d 600, *review denied,* 103 Wn.2d 1041 (1985)). Here, the record indicates no intentional misconduct by the counsel for the plaintiff. Counsel apparently had difficulty determining before trial what experts would be available to testify, and told the opposing counsel the names as soon as he was himself certain who would be testifying. The record gives no indication the delay was due to

tactical considerations. *See Barci v. Intalco Aluminum Corp.*, 11 Wn. App. 342, 522 P.2d 1159, *review denied*, 84 Wn.2d 1012 (1974) (names of expert witnesses provided to opponent as soon as possible; no intentional delay found). We find no error.

## III

Did the trial court err in declaring four witnesses unavailable under ER 804, allowing prior testimony to be admitted?

The defendants next challenge the trial court's ruling that four witnesses for the plaintiff were unavailable, allowing the plaintiff to read into the record their previous testimony from the criminal RICO trial of these defendants. The plaintiff states the witnesses did satisfy the test of unavailability.

ER 804(a)(5) defines a witness as unavailable if the witness "[i]s absent from the hearing and the proponent of his statement has been unable to procure his attendance . . . by process or other reasonable means." If a witness is found unavailable under this test, the witness' former testimony may be admitted into evidence under ER 804(b)(1). As the rule indicates, an inability to reach the witness by subpoena power is not sufficient to establish unavailability; the party calling the witness must also establish an inability to reach the witness by "other reasonable means." The party offering the out-of-court statement of a witness beyond the legal reach of a subpoena should at least be required to represent to the court that it made an effort to secure the voluntary attendance of the witnesses at trial. 5A K. Tegland, Wash. Prac., *Evidence* § 393, at 271 (2d ed. 1982).

Counsel for the plaintiff represented to the trial court that the witnesses found unavailable here were out of the state, two in federal prisons, and two employed as federal agents in other states. The record, however, gives no indication counsel made *any* effort to obtain the voluntary attendance of the witnesses. Plaintiff claims an inability to

subpoena the witnesses is alone sufficient to establish unavailability. This view contradicts both the plain language of the rule and the commentary. While plaintiff made unsupported statements to the trial court that the costs of bringing the witnesses to this state would be prohibitive, these unsupported representations do not alone merit a conclusion the witnesses were unavailable, nor do they indicate any effort by the plaintiff to make a reasonable effort to obtain the attendance of the witnesses. Since no showing of unavailability was made, the trial court erred in admitting the former testimony of the plaintiff's witnesses. The admission of evidence without a proper showing of unavailability of the witness is reversible error. 4 D. Louisell & C. Mueller, *Federal Evidence* § 486, at 1055–56 (1980) ("it should be necessary for a party invoking one of the exceptions in Rule 804(b) to represent to the court that it communicated with the declarant (or tried to do so) in an effort to secure his voluntary attendance at trial"); *Janich Bros. v. American Distilling Co.*, 570 F.2d 848, 859 (9th Cir. 1977) (counsel made "conclusory allegations that [the witness] was outside the jurisdiction of the court. This is inadequate. . . . Thus, the . . . exception was not available"). The admission of prior testimony was error.

IV

Did the trial court err in allowing the plaintiff recovery under the civil RICO statute?

The defendants next argue the plaintiff has no cause of action under RICO because lost wages are not recoverable under the statute and argue the trial court erred in instructing the jury on this theory and in relying on RICO to treble the award of damages.

To establish a civil action under RICO, plaintiffs must prove: (1) injury to their business or property, (2) by reason of, (3) a violation of 18 U.S.C. § 1962. 18 U.S.C. § 1964(c); *Anderson v. Janovich*, 543 F. Supp. 1124 (W.D. Wash. 1982). In *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 87 L. Ed. 2d 346, 105 S. Ct. 3275 (1985), the United States

Supreme Court specifically rejected the narrow interpretation of "injury" which had been adopted by the Court of Appeals for the Second Circuit. The Court of Appeals had held a civil plaintiff could recover under RICO only where the injury was a "racketeering injury", an injury different in kind from the direct injury resulting from the predicate acts of racketeering activity. *Sedima,* at 485. In interpreting the intent of Congress in enacting civil RICO to be focused on remedying "'certain specific kinds of organized criminality,'" the Court of Appeals had concluded civil RICO cases must be limited to injuries "not simply caused by the predicate acts, but also caused by an activity which RICO was designed to deter." *Sedima,* at 485; *see generally Civil RICO and the Prior Criminal Conviction Requirement: Has the Second Circuit Drawn the Net Too Tightly?— Sedima, S.P.R.L. v. Imrex Co., 741 F.2d 482 (2d Cir. 1984), cert. granted, 53 U.S.L.W. 3506 (U.S. Jan. 14, 1985) (No. 84-648),* 60 Wash. L. Rev. 461 (1985).

The Supreme Court reversed, finding a narrow interpretation to be contrary to both the language and intent of the act. The Court stated it found "no warrant in the language or the history of the statute for denying recovery thereunder to 'the direct victims of the [racketeering] activity,' . . . while preserving it for the indirect." *Sedima,* at 497 n.15. *See also American Nat'l Bank & Trust Co. v. Haroco, Inc.,* 473 U.S. 606, 87 L. Ed. 2d 437, 105 S. Ct. 3291 (1985) (companion case reaching same conclusion). The Court also stated:

> RICO is to be read broadly. This is the lesson not only of Congress' self-consciously expansive language and overall approach . . . but also of its express admonition that RICO is to "be liberally construed to effectuate its remedial purposes," . . . The statute's "remedial purposes" are nowhere more evident than in the provision of a private action for those injured by racketeering activity.

*Sedima,* at 497-98.

The Supreme Court also rejected two other limiting interpretations of the civil RICO statute. First, the Court

expressed disapproval of the argument that compensable injuries must be limited to "competitive" injuries:

> Again, . . . Congress "nowhere suggested that actual anti–competitive effect is required for suits under the statute." . . . The language it chose, allowing recovery to "[a]ny person injured in his business *or property*," § 1964(c) (emphasis added), . . . suggests that the statute is not so limited.

*Sedima,* at 497 n.15. The Court also rejected the argument that RICO plaintiffs should have to prove the same elements as antitrust plaintiffs, and be limited to only antitrust types of recovery:

> It is also significant that a previous proposal to add RICO–like provisions to the Sherman Act had come to grief in part precisely because it "could create inappropriate and unnecessary obstacles in the way of . . . a private litigant [who] would have to contend with a body of precedent—appropriate in a purely antitrust context—setting strict requirements on questions such as 'standing to sue' and 'proximate cause.'" 115 Cong. Rec. 6995 (1969) (ABA comments on S. 2048); see also *id.,* at 6993 (S. 1623 proposed as an amendment to Title 18 to avoid these problems). In borrowing its "racketeering injury" requirement from antitrust standing principles, the court below created exactly the problems Congress sought to avoid.

*Sedima,* at 498–99.

 The defendants' arguments that plaintiff's claim for *lost* wages should not be within the scope of injuries recoverable under RICO conflict with these conclusions in *Sedima.* Injuries resulting from the predicate offenses are compensable under the act. The scope of recoverable damages for injury "in his business or property" is to be broadly construed.

The evidence presented in the trial court below could have supported a jury finding the plaintiff's loss of wages was an injury to his "business". The narrow interpretation of "business or property" advocated by the defendants, based upon analogy to numerous cited cases of antitrust law, has been rejected by the Supreme Court. Federal cases

since *Sedima* have specifically held lost wages may be recovered in civil RICO actions, and we follow that conclusion. *Rodonich v. House Wreckers, Local 95,* 627 F. Supp. 176 (S.D.N.Y. 1985); *Hunt v. Weatherbee,* 626 F. Supp. 1097 (D. Mass. 1986). The defendants' assertion the plaintiff's claims for lost wages are not within the scope of injuries compensable in a civil RICO action does not appear to be supported by the language of the statute or applicable case law. We find no error.

## V

Did the trial court err in instructing the jury on both the tort of outrage and assault?

The defendants claim error in the instruction of the jury on both assault and the tort of outrage regarding the same conduct, allowing for the possibility of double recovery. The tort of outrage, or intentional infliction of emotional distress, has long been recognized in Washington. *Browning v. Slenderella Sys.,* 54 Wn.2d 440, 341 P.2d 859 (1959). In *Grimsby v. Samson,* 85 Wn.2d 52, 530 P.2d 291, 77 A.L.R.3d 436 (1975), we adopted the definition of the tort of outrage from the Restatement (Second) of Torts § 46 (1965). The basic elements of the tort are (1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress. Restatement (Second) of Torts, *supra; Grimsby v. Samson, supra; Contreras v. Crown Zellerbach Corp.,* 88 Wn.2d 735, 565 P.2d 1173 (1977).

The defendant correctly notes damages for mental or emotional distress are recognized as recoverable under either the theory of assault or outrage. *Titus v. Tacoma Smeltermen's, Local 25,* 62 Wn.2d 461, 470–71, 383 P.2d 504 (1963) (mental distress, suffering, or anxiety caused by assault are recoverable damages). Apparently only two decisions, however, have addressed the relationship between claims for outrage and for assault. In *Bankhead v. Tacoma,* 23 Wn. App. 631, 638, 597 P.2d 920 (1979), the court held the trial court properly dismissed the claim for

intentional infliction of emotional distress where the plaintiff also had a claim for assault. The court stated:

> In our view, plaintiff may present his claim for intentional infliction of emotional distress as a part of his assault claim. Indeed, an assault claim has long been held to encompass claims for intentional infliction of emotional distress arising out of the assault. Damages for emotional distress may be awarded as part of the assault damages.

In *Criss v. Criss,* 356 S.E.2d 620 (W. Va. 1987), the court specifically held instruction on both assault and outrage provides double recovery, since assault includes recovery for emotional distress resulting from the tortious conduct.

The language of the Restatement supports a conclusion that outrage should allow recovery only in the absence of other tort remedies. Comment *b* to section 46 states:

> [T]he rule stated in this Section has been fully recognized as a separate and distinct basis of tort liability, *without* the presence of the elements necessary to any other tort, such as assault, battery . . . or the like.

(Italics ours.) Restatement (Second) of Torts § 46, comment *b,* at 72 (1965). This result is also supported by a review of the Washington cases allowing recovery for outrage; none of the cases presented facts to support an assault claim. *Corrigal v. Ball & Dodd Funeral Home, Inc.,* 89 Wn.2d 959, 577 P.2d 580 (1978) (improper handling of human remains); *Contreras v. Crown Zellerbach Corp., supra* (racial slurs); *Grimsby v. Samson, supra* (improper medical care); *Browning v. Slenderella Sys., supra* (racial discrimination); *Phillips v. Hardwick,* 29 Wn. App. 382, 628 P.2d 506 (1981) (misconduct in the sale of homes); *Jackson v. Peoples Fed. Credit Union,* 25 Wn. App. 81, 604 P.2d 1025 (1979) (debt collection tactics). The instruction given by the trial court was erroneous.

## VI

Did the trial court err in initiating ex parte contact during trial regarding an issue in the case?

During the trial, a question arose among the parties

regarding a stipulation made by several of the defendants in an earlier civil trial involving a different plaintiff. The next day, the trial judge informed the parties he had called the attorney who had represented that plaintiff to obtain an answer to the dispute. The defendants argue it was error for the judge to engage in this ex parte contact.

■ While we strongly disapprove of the action of the trial judge, the defendants have not asserted any prejudice resulting from the action. Absent a showing of prejudice to the outcome of the trial, an error does not constitute grounds for reversal. *Brown v. Spokane Cy. Fire Protec. Dist. 1,* 100 Wn.2d 188, 196, 668 P.2d 571 (1983); 14 L. Orland & K. Tegland, Wash. Prac., *Trial Practice* § 220 (4th ed. 1986). The defendants have not contested the accuracy of the information or the use of it at trial; we find no error.

## VII

Did the trial court improperly prejudice defendant Williams by allowing admission of a stipulation of the other defendants?

In the same earlier civil action, the defendants had stipulated to certain facts regarding their conduct and the claim. The defendants contend the stipulation was improperly admitted in the present case against defendant Williams, who was not a party to the stipulation at the earlier trial.

Defendants' arguments on this issue are without merit. The jury instruction on this matter stated:

Prior to this trial, the defendants George Janovich, John Joseph Carbone and John M. Carbone made certain statements in another civil lawsuit. These statements are admissible in this lawsuit and are binding upon them.

These statements were not made by Ronald J. Williams and so they are not binding upon him whatsoever.

This instruction properly informed the jury of the use it was to make of the admissions and specifically prevented the very error Williams claims here. *See Feldmiller v. Olson,* 75 Wn.2d 322, 324, 450 P.2d 816 (1969) (trial court

properly informed jury a statement by one defendant was only evidence as to that defendant, not the other defendant; no error found). We find no error.

## VIII

Did the trial court err in instructing the jury regarding the proper use of admissions from the prior criminal RICO trial?

One of the jury instructions included the following language:

[N]one of these defendants may deny that they were convicted of being members of a conspiracy as follows:

. . .

8. . . .

The defendants, John Joseph Carbone, Joseph M. Carbone and Ronald John Williams were charged and convicted of conspiring to violate 18 U.S.C. [§] 1962. One of the acts in that charge reads as follows:

On or about February 5, 1978, in Pierce County, within the Western District of Washington, John Joseph Carbone, Ronald John Williams, Joseph M. Carbone, a/k/a "Joey", and other persons unknown to the Grand Jury, did knowingly and maliciously [cause] a fire which was manifestly dangerous to human life, in that they did cause a fire at the building containing the "Night Moves" tavern after binding and blindfolding the night watchman of the "Night Moves" and leaving him bound and blindfolded in or adjacent to the building containing the "Night Moves" tavern.

The aforementioned conviction did not determine in fact whether these three defendants actually committed this act. It will be for you to determine whether plaintiff has proved by a preponderance of the evidence that these defendants caused this act to be committed.

You are further instructed that defendant George Janovich was neither charged nor convicted of this act.

The defendants' conviction did not determine that the conspiracy committed the acts of arson and personal injury that plaintiff had complained of in this case.

It is for you to determine based upon the evidence you have heard whether plaintiff had proven by a preponderance of the evidence in this case that these individuals as a group or as individuals caused him damage unlawfully.

The defendants claim this instruction was an improper use of collateral estoppel against the defendants.

When facts have been adjudicated in a lawsuit, the doctrine of collateral estoppel, or issue preclusion, precludes those parties to the suit from denying those facts in a later proceeding. *See generally* Trautman, *Claim and Issue Preclusion in Civil Litigation in Washington,* 60 Wash. L. Rev. 805, 829 (1985). The United States Supreme Court in *Emich Motors Corp. v. GM Corp.,* 340 U.S. 558, 569, 95 L. Ed. 534, 71 S. Ct. 408 (1951) stated: "In the case of a criminal conviction based on a jury verdict of guilty, issues which were essential to the verdict must be regarded as having been determined by the judgment." The *Emich* case is factually similar to the present one. The plaintiffs in *Emich* sought to use evidence of the defendants' conviction of conspiracy under the Clayton Act in a later civil Clayton Act proceeding. The conviction in *Emich,* as here, had not required the government to prove which specific acts among those listed in the indictment had been committed in order to support a guilty verdict. *Emich* held estoppel "extends only to questions 'distinctly put in issue and directly determined' in the criminal prosecution." *Emich,* at 569 (quoting *Frank v. Mangum,* 237 U.S. 309, 334, 59 L. Ed. 969, 35 S. Ct. 582 (1915)). The trial court may also use other portions of the prior proceeding, however, in order to clarify the jury's understanding of the prior proceeding:

> [The trial judge] must be free to exercise "a well–established range of judicial discretion." *Nardone* v. *United States,* 308 U. S. 338, 342 [84 L. Ed. 307, 60 S. Ct. 266] (1939). He is not precluded from resorting to such portions of the record, including the pleadings and judgment, in the antecedent case as he may find necessary or appropriate to use in presenting to the jury a clear picture of the issues decided there and relevant to the case on trial. . . . A similar discretion must be exercised in approving the attachment of a copy of the indictment as an exhibit to the complaint.

In summary the trial judge should (1) examine the record of the antecedent case to determine the issues

decided by the judgment; (2) in his instructions to the jury reconstruct that case in the manner and to the extent he deems necessary to acquaint the jury fully with the issues determined therein; and (3) explain the scope and effect of the former judgment on the case at trial.

*Emich,* at 571–72.

Here, it appears the trial court satisfied the *Emich* standards in its instruction regarding the prior criminal RICO proceeding. Only those facts which actually were proved in the criminal prosecution were presented to the jury as established facts. The instruction specified that the portion excerpted from the indictment had *not* been proved at the criminal trial, and that the plaintiff still carried the burden of establishing the defendants' conduct by a preponderance of the evidence. The instruction was not inaccurate or confusing, but satisfied the guidelines of *Emich* regarding use of a prior criminal proceeding in a later civil action. We find no error.

## IX

Did the trial court abuse its discretion in determining the amount of the attorney fees award?

The defendants assert the trial court erred in calculating the attorney fee award of $500,000. The record gives no indication how the trial court reached the figure, except for one letter from the trial judge to the parties stating "an appropriate segregation of his attorney's fees . . . would be one–third of the trebled amount." Counsel for the plaintiff had argued to the trial court a contingency fee arrangement of one–third to 50 percent of the judgment was "standard" in a case of this nature.

The attorney fee was awarded pursuant to the federal civil RICO statute allowing recovery of a "reasonable attorney's fee." 18 U.S.C. § 1964(c). We therefore turn to federal decisions for interpretation of this provision. Federal courts have widely accepted the "lodestar" method of calculating a reasonable attorney fee, first developed in

*Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir. 1973). The United States Supreme Court recently approved this method in *Pennsylvania v. Delaware Vly. Citizens' Coun. for Clean Air,* ___ U.S. ___, 92 L. Ed. 2d 439, 106 S. Ct. 3088, 3097 (1986), describing the procedure as follows:

> First, the court was to calculate the "lodestar," determined by multiplying the hours spent on a case by a reasonable hourly rate of compensation for each attorney involved. . . . Second, using the lodestar figure as a starting point, the court could then make adjustments to this figure, in light of "(1) the contingent nature of the case, reflecting the likelihood that hours were invested and expenses incurred without assurance of compensation; and (2) the quality of the work performed as evidenced by the work observed, the complexity of the issues and the recovery obtained." . . . This formulation emphasized the amount of time expended by the attorneys . . .

The court then discussed the use of the adjustment factors, indicating they should only modify the lodestar figure in "'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts." *Pennsylvania v. Delaware Vly. Citizens' Coun. for Clean Air,* 106 S. Ct. at 3098 (quoting *Blum v. Stenson,* 465 U.S. 886, 898–901, 79 L. Ed. 2d 891, 104 S. Ct 1541 (1984)).

The record in the present case makes obvious the trial court performed none of the steps in calculating the attorney fee award here. No consideration was given to the amount of time expended by the counsel for the plaintiff, thus making it impossible to consider whether the adjustment factors should be applied, or to what extent, if any. The trial court's method of calculation of the attorney fee award here was an abuse of discretion and is in error.

## X

Did the trial court improperly prejudice defendant Janovich in refusing to instruct the jury regarding

multiple conspiracies?

The defendants assert the jury was inadequately informed that the prior RICO criminal prosecution resulted in convictions based upon two separate conspiracies, one including defendant Janovich and the other not including him. The defendants claim this failure prejudiced Janovich.

As quoted above, the relevant instruction to the jury stated defendants Williams, John Joseph Carbone, and Joseph M. Carbone were convicted of conspiracy, and one of the acts of the conspiracy listed in the indictment was the arson at issue here. The instruction specifically stated, "You are further instructed that defendant George Janovich was neither charged nor convicted of this act." In light of this language in the instruction, defendants' argument appears to be without merit.

The defendants quote extensively from numerous opinions supporting the proposition that the jury should be made aware of different levels of participation by different defendants resulting in different levels of liability. The instruction given here, however, adequately instructed the jury to consider differing levels of liability. The jury's ability to determine the liability of each defendant separately is fully demonstrated by its verdict apportioning the damages attributable to each defendant. Defendant Janovich was singled out by the jury for a lesser amount of liability. In light of the language of the instruction and the jury verdict, we find no error and no prejudice on this issue.

In summary, (1) we hold there is concurrent jurisdiction over civil actions under RICO; (2) we hold the trial court erred in Rice v. Janovich in declaring four witnesses unavailable under ER 804 and in instructing the jury on both the tort of outrage and assault; and (3) because of our disposition of Rice v. Janovich we need not consider whether there was cumulative error on the part of the trial court, and the question of whether the trial court erred in denying the motion of defendants to strike defendants' cost bill is moot.

Both Rice v. Janovich and Auty v. Ballard are reversed

and remanded to the trial court for further proceedings not inconsistent with this opinion.

UTTER, BRACHTENBACH, DORE, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., and HAMILTON, J. Pro Tem., concur.