63 F.3d 863
 RICO Bus.Disp.Guide 8870, 95 Cal. Daily Op. Serv. 6485,
95 Daily Journal D.A.R. 11,097,
95 Daily Journal D.A.R. 11,143
 FEMINIST WOMEN'S HEALTH CENTER, Plaintiff-Appellee,
and
Beverly Whipple, Diane Hale, Kimberly Boyd, Deborah Barton, Plaintiffs,
v.
Sharon CODISPOTI, Defendant-Appellant,
and
Dottie Roberts, Curtis Beseda, Carl Codispoti, et al., Defendants.
FEMINIST WOMEN'S HEALTH CENTER, Beverly Whipple, Diane Hale,
Kimberly Boyd, Deborah Barton, Plaintiffs-Appellees,
v.
Sharon CODISPOTI, Curtis Beseda, Carl Codispoti, Defendants,
and
Dottie Roberts, Defendant-Appellant.
FEMINIST WOMEN'S HEALTH CENTER, Beverly Whipple, Diane Hale,
Kimberly Boyd, Deborah Barton, Plaintiffs-Appellees,
v.
Dottie ROBERTS, Curtis Beseda, Carl Codispoti, Defendants,
and
Sharon Codispoti, Defendant-Appellant,
and
Ronald T. Schaps, Ronald E. McKinstry, Brian Zeringer,
attorneys for defendant Sharon Codispoti, Appellants.
 Nos. 90-35266, 90-35298 and 91-35006.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 5, 1992.
Submission Withdrawn July 27, 1993.
Resubmitted Aug. 8, 1995.
Decided Aug. 17, 1995.
 
 Ronald E. McKinstry, Bogle & Gates, Seattle, Washington, and Douglas J. Smith, Everett, WA, for defendants-appellants.
 Kristin M. Houser, Schroeter, Goldmark & Bender, Seattle, WA, for plaintiffs-appellees.
 Appeals from the United States District Court for the Western District of Washington.
 Before: HUG, NOONAN, and THOMPSON, Circuit Judges.
 HUG, Circuit Judge:
 
 
 1
 The Feminist Women's Health Center, Beverly Whipple, Diane Hale, Kimberly Boyd and Deborah Barton (the "Center") brought this action seeking treble damages under the civil provisions of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. Secs. 1962(c) and (d) ("RICO"). The Center provided abortions as well as other health services. The Center complained that Dottie Roberts and Sharon Codispoti ("appellants"), and Curtis Beseda, in association with others that constituted an enterprise, had engaged in a campaign to close the clinic. The Center alleged that these named persons committed the predicate acts of arson, extortion, and attempted extortion, under the Hobbs Act, and that these acts constituted a pattern of racketeering activity within the meaning of RICO section 1962(c). The Center also alleged that these named persons conspired to violate section 1962(c), which is a violation of section 1962(d). The activities that were allegedly designed to close the clinic continued over a period of eight months during which three fires were set in the clinic. The last fire destroyed the clinic and it did not reopen. Beseda was convicted of violating both section 1962(c) and (d) and did not appeal. Roberts and Codispoti were convicted of violating section 1962(d), the conspiracy count, and have timely appealed.
 
 
 2
 A principal focus of this appeal is whether the district court erred by not dismissing this action on grounds of res judicata. Because we conclude that it did err and we reverse on that ground, we do not reach appellants' other arguments. We also reverse and vacate the district court's award of attorneys' fees to the Center, and we vacate the Rule 11 sanctions imposed on Codispoti and her attorney.
 
 I.
 Statement of Facts
 
 3
 In August 1983, the Center opened a women's health clinic in Everett, Washington. The health clinic provided a variety of services to the public, including abortion. Sharon Codispoti, Dottie Roberts, Curtis Beseda, and many others opposed to abortion began to protest at the clinic even before it opened for business. During the eight months that the clinic was located in Everett, appellants and others picketed, leafletted, shouted at, and taunted patients and staff members. On some occasions, they also formed gauntlets along both sides of the sidewalk to the Center.
 
 
 4
 Evidence showed that on Friday nights Beseda and appellants, among others, would park their cars in the parking spaces in front of the clinic so that on Saturday mornings patients would not be able to park there. Evidence also indicated that Roberts and Codispoti were responsible for organizing the parking. This parking was not unlawful.
 
 
 5
 Beseda, Codispoti, and Roberts attended a couple of meetings concerning the Center. Codispoti's notes of one of the meetings clearly indicate that the group's purpose was "shutting the clinic down." Both Codispoti and Roberts denied any agreement to use illegal means to shut down the clinic. Other testimony linked Roberts and Codispoti to a harassing phone call campaign. For a period of time, the clinic received 400 to 700 harassing phone calls per day. Codispoti made at least one false appointment at the clinic. The clinic had more cancelled appointments than were usual, but there was no proof that all of these appointments were made by appellants or that the cancellations were not made by patients who were deterred by the protesters.
 
 
 6
 Curtis Beseda has been convicted of setting a series of fires at the clinic. The first fire occurred in the early morning of Saturday, December 3, 1983. The clinic was closed for two months after that fire. The second fire was not as destructive and the clinic was not closed for long. The third fire was very destructive. Some time after the third fire, the clinic decided not to reopen.
 
 
 7
 There was no evidence that Roberts or Codispoti helped set any of the fires. The third fire took place during the middle of a trial in Washington state court. The Center had gone to state court seeking an injunction against the protesters. That court ultimately granted an injunction which, among other things, enjoined appellants, appellees, and others from harassing or intimidating each other, enjoined the parties from engaging in illegal conduct, enjoined making or participating in any harassing telephone calls, enjoined the blocking or obstruction of ingress or egress to the premises, enjoined trespassing and assault, enjoined picketing any closer than 10 feet from the parking lot entrance, and enjoined the photographing and videotaping of patients. The injunction turned out to be unnecessary because the clinic never reopened.
 
 
 8
 Subsequent to the state trial, the Center filed suit in federal court, alleging that Codispoti, Roberts, Beseda, and others had violated RICO. The Center sued under both section 1962(c),[1] a substantive violation of RICO, and section 1962(d),[2] a conspiracy section. The jury found that Beseda, Roberts, and Codispoti all violated section 1962(d), but it found that only Beseda violated section 1962(c). The alleged predicate acts were arson, extortion, and attempted extortion under the Hobbs Act. The judge divided attorneys' fees equally among the defendants. Beseda does not appeal the judgment, but Roberts and Codispoti do.
 
 
 9
 In a subsequent action to execute the judgment, the district court sanctioned both Codispoti and her attorney. The appeal of those sanctions is also before this panel.
 
 II.
 Res Judicata[3]
 
 10
 Appellants argue that the district court should have dismissed the Center's federal RICO claims because the Center could have raised these claims in the earlier state action, and thus, the claims are now barred by res judicata. We agree. We conclude that the RICO claims were ripe at the time the state court judgment was filed, and therefore, the Center could have brought them in the earlier trial. Because the Center did not, it is now barred from relitigating these claims.
 
 
 11
 The State action was tried from April 19 to May 1, 1984. Beseda set fire to the Center on December 3, 1983, March 26, 1984, and April 19, 1984. After the third fire, the Center decided to close the clinic. During the state trial, the Center produced evidence regarding the third fire, the clinic's loss of its insurance, and its belief that it would be unable to obtain additional insurance.
 
 
 12
 The state court entered a memorandum decision in May 1984, but it did not enter its findings, conclusions, and final judgment until September 12, 1985, at least one year after the clinic had closed. The court issued the permanent injunction on September 12, 1985. Neither side appealed.
 
 
 13
 The Center filed this action on September 11, 1986. Appellants twice moved for summary judgment, asserting in part that the prior state action barred the subsequent federal action on the ground of res judicata. In both instances, the district court denied the res judicata argument, reasoning that the RICO claims were based on a different infringement of the plaintiffs' rights and sought different redress, and that the claims were not mature at the state trial because the Center's decision not to reopen the clinic did not come until after the state trial.
 
 
 14
 We analyze this issue under Washington law because we must give the same preclusive effect to the state court judgment as would the state court. Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984). "Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." Id. at 77 n. 1, 104 S.Ct. at 894 n. 1. Under Washington law, claim preclusion means "a plaintiff is not allowed to recast his claim under a different theory and sue again.... [A]ll issues which might have been raised and determined are precluded." Shoemaker v. City of Bremerton, 109 Wash.2d 504, 745 P.2d 858, 860 (1987) (en banc). Res judicata bars a subsequent action when a prior judgment concurs in identity with the subsequent action in four respects: "(1) subject matter; (2) cause of action; (3) persons and parties; and (4) the quality of the persons for or against whom the claim is made." Rains v. State, 100 Wash.2d 660, 674 P.2d 165, 168 (1983) (en banc).
 
 
 15
 Elements one, three, and four are clearly satisfied in this case. Although Washington case law does not define what constitutes the same "subject matter" for purposes of res judicata, the prior state action and the present federal action both concern the activities of Roberts and Codispoti against the Center. This is sufficient to satisfy the subject matter element. Elements three and four are satisfied because the parties involved in the present action are virtually identical to the parties that litigated the prior state action.
 
 
 16
 Thus, the main issue before us is element two: whether the "cause of action" previously asserted in state court is the same as that now brought here. The Washington Supreme Court has acknowledged that there is no simple test for determining whether causes of action are sufficiently identical; it does, however, consider the following criteria relevant to such a determination: "(1) [W]hether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transaction or nucleus of facts." Rains, 674 P.2d at 168 (quoting Costantini v. Trans World Airlines, 681 F.2d 1199, 1201-02 (9th Cir.) (applying California law), cert. denied, 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 932 (1982)). Costantini, which Washington drew on for support in Rains, further stated that "[t]he last of these criteria is the most important." Costantini, 681 F.2d at 1202.
 
 
 17
 Washington has applied the above criteria in a variety of ways, sometimes combining the elements into one analysis, sometimes addressing all four factors, and other times focusing on only one factor. See Claim and Issue Preclusion in Civil Litigation in Washington, Philip A. Trautman, 60 Wash.L.Rev. 805, 816 (1985). It is not necessary that all four factors favor preclusion to bar the claim. See id. While "the rule is universal that a judgment upon one cause of action does not bar suit upon another cause which is independent of the cause which was adjudicated," Seattle-First Nat'l Bank v. Kawachi, 91 Wash.2d 223, 588 P.2d 725, 728 (1978) (en banc) (emphasis added), it is equally clear that res judicata applies to "every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time." Sanwick v. Puget Sound Title Ins. Co., 70 Wash.2d 438, 423 P.2d 624, 627 (1967) (quoting Sayward v. Thayer, 9 Wash. 22, 36 P. 966, 38 P. 137 (1894)).
 
 
 18
 The relevant factors are closely related and necessarily overlap. This is especially true of factors two and four. Both cases arose from the same transaction and nucleus of facts. Each case was predicated on appellants' activities against the Center. Thus, the Center had to produce substantially the same evidence in both suits to sustain its case. See Mellor v. Chamberlin, 100 Wash.2d 643, 673 P.2d 610, 612 (1983) ("It has been said that the claim is the same ... if the evidence needed to support the second action would have sustained the first action") (citation omitted). In the first action, the Center used evidence of appellants' activities to show infringement of its constitutional right to provide abortions. In the second action, the Center used substantially the same evidence to show infringement of the Center's right to operate its business free from a pattern of racketeering.
 
 
 19
 The Center contends that the evidence necessary to sustain its RICO action was not available at the time of the state trial. However, the state court heard evidence on the third fire and on the clinic's loss of insurance. The Center could also have presented evidence on its decision to close the clinic. Likewise, although the Center did not present evidence of conspiracy and extortion in the state action, it is clear that it could have done so because it had the evidence available to it prior to the state court's entry of final judgment.[4] Because both actions arose from a common nucleus of fact and required presentation of substantially the same evidence to establish each claim, we conclude that factors two and four weigh heavily in favor of preclusion.
 
 
 20
 A closer and more difficult question is whether the two suits involved infringement of the same right. The state claim focused on the Center's constitutional right to provide abortions, as well as the patients' constitutional right to receive abortions. The federal claim concerns infringement of the Center's right to operate its business free from a pattern of racketeering. Both of these claims, however, arose from an alleged right to be free from appellants' disruptive activities. See id. (claim is same if primary right is violated by the same wrong).
 
 
 21
 In essence, the Center is merely seeking new remedies under a new legal theory: treble damages under RICO for the same conduct on behalf of appellants. This does not establish an independent cause of action. Washington case law clearly supports this proposition. See Claim and Issue Preclusion in Civil Litigation in Washington, 60 Wash.L.Rev. at 815-816 (citing cases); see also Restatement (Second) of Judgments Sec. 25 & cmt. d and f (plaintiff's claim is extinguished "even though the plaintiff is prepared in the second action (1) to present evidence or grounds or theories of the case not presented in the first action, or (2) to seek remedies or forms of relief not demanded in the first action.").
 
 
 22
 Finally, although we agree with the district court that the rights and interests established in the state's judgment could not be impaired by the present suit, this factor is irrelevant to this case. Typically, claim preclusion bars the losing party from trying its luck with another suit. It would be a rare instance in which the victors in the first suit, such as the Center was here with its injunction, would want to destroy or impair their earlier triumph. They would want to add to it, as the Center seeks to do by suing for treble damages under RICO.
 
 
 23
 Applying the above principles to this case, we conclude that res judicata bars the Center's RICO action against appellants. This case presents a clear example of claim splitting that the court-created concept of res judicata was designed to prevent. Whether the result of an afterthought or an oversight, the Center cannot now sue appellants under a new legal theory, seeking new remedies, on a claim that could have been raised in the state action.
 
 
 24
 This brings us to our final point. The Center contends that it should not be barred by res judicata because at the time of the state trial it was unsettled whether state courts had concurrent jurisdiction over RICO claims. This does not excuse the Center from the bar of res judicata.
 
 
 25
 An exception to the general rule of claim preclusion exists where "[t]he plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of limitations on the subject matter jurisdiction of the courts." Restatement (Second) of Judgments Sec. 26(1)(c). For example, " 'a state judgment will not have preclusive effect on a cause of action within the exclusive jurisdiction of the federal courts.' " Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 382, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985) (citing Restatement (Second) of Judgments Sec. 26(1)(c) (1982)).
 
 
 26
 The Supreme Court, subsequent to the termination of the state action, issued its opinion that states have concurrent jurisdiction over federal civil RICO claims. Tafflin v. Levitt, 493 U.S. 455, 460, 110 S.Ct. 792, 795-96, 107 L.Ed.2d 887 (1990). Assuming that Washington has a prior jurisdiction competency exception, this exception is nonetheless not applicable here. Washington state courts clearly have jurisdictional competency to hear federal civil RICO claims. See Rice v. Janovich, 109 Wash.2d 48, 742 P.2d 1230, 1233-35 (1987); Tafflin, 493 U.S. at 460, 110 S.Ct. at 795-96.
 
 
 27
 However, even without the benefit of Tafflin and Rice, it was the Center's obligation to bring its RICO claims with the first suit. At the time of the state trial, the question of state court jurisdiction over RICO claims was wide open. The Center had no reasonable ground to believe that the Washington court would not exercise jurisdiction over its RICO claims. See Gulf Offshore Co. v. Mobil Oil Corp., 453 U.S. 473, 477-78, 101 S.Ct. 2870, 2875, 69 L.Ed.2d 784 (1981) ("general principle of state-court jurisdiction over cases arising under federal laws is straightforward: state courts may assume subject-matter jurisdiction over a federal cause of action absent provision by Congress to the contrary or disabling incompatibility between the federal claim and state-court adjudication."). The Center's reliance on Kinsey v. Nestor Exploration Ltd., 604 F.Supp. 1365, 1371 (E.D.Wash.1985) does not alter our conclusion. Absent controlling authority, a litigant must at least test the matter through the state courts, and possibly to the United States Supreme Court, before it can assert that it is foreclosed from bringing such an action in state court. The plaintiff in Rice tested the matter and succeeded. There was nothing to prevent the Center from so trying.
 
 
 28
 As a matter of policy, claim splitting is prohibited "primarily [ ] to conserve judicial resources and to ensure repose for parties who have already responded adequately to the plaintiff's claims." Babcock, 768 P.2d at 487. Based on this policy and the concurrence in identity in both actions, appellees' second suit is barred by res judicata.
 
 III.
 Attorneys' Fees
 
 29
 The district court awarded attorneys' fees to the Center under RICO, 18 U.S.C. Sec. 1964(c). It then divided the responsibility for attorneys' fees equally among the defendants. Because we conclude that this action is barred by res judicata, we reverse and vacate the award of fees imposed against appellants.
 
 IV.
 Sanctions
 
 30
 In a separate but related appeal, No. 91-35006, Sharon Codispoti and her attorneys, Ronald T. Schaps, Ronald E. McKinstry, and Brian Zeringer challenge an order of the district court imposing a $500 sanction on them for violating Fed.R.Civ.P. 11 by filing a frivolous motion in connection with certain post-judgment proceedings. The sanction order arose out of judgment creditors' attempts to execute on the judgment entered against Codispoti on the above RICO claims. The record before us contains no indication that the district court notified Codispoti or her attorneys of its intention to sanction them, or offered them an opportunity to explain their allegedly improper motion. Accordingly, we vacate the sanction.
 
 
 31
 The judgment of the district court is REVERSED. The award of attorneys' fees is REVERSED and VACATED. The sanctions order is VACATED.
 
 
 
 [1]
 18 U.S.C. Sec. 1962(c) states:
 It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
 
 
 [2]
 18 U.S.C. Sec. 1962(d) states:
 It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.
 
 
 [3]
 Although some courts use "res judicata " to encompass both issue preclusion and claim preclusion, our use of "res judicata " in this case is only in the context of claim preclusion. See, e.g., Shoemaker v. City of Bremerton, 109 Wash.2d 504, 745 P.2d 858, 860 (1987) (noting that term "res judicata " encompasses both issue and claim preclusion)
 
 
 [4]
 The district court found, and the Center argues, that the RICO claims were not ripe because the decision to close the clinic did not come until after the state trial. Thus, the evidence could not be fully presented at that trial. However, all of the events necessary to support a RICO claim had occurred prior to the end of the state trial. The Center could have presented its RICO claim at that time. Neither the third fire nor the decision to close the clinic were essential to the Center's RICO claim, and thus, the claim was ripe during the state trial